The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Geraldine A. RIVERA, Defendant–Appellant.

No. 99CA2038.

Colorado Court of Appeals, Div. V.

March 14, 2002.

Certiorari Denied Oct. 21, 2002.

Ken Salazar, Attorney General, Dawn M. Weber, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Karen M. Gerash, Deputy State Public Defender, Julie Iskenderian, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CASEBOLT.

Defendant, Geraldine A. Rivera, appeals the judgment of conviction entered upon jury verdicts finding her guilty of one count of securities fraud, one count of conspiracy to commit securities fraud, and one count of sale of an unregistered security. Defendant also appeals the denial of her Crim. P. 35(c) postconviction motion asserting ineffective assistance of counsel. We affirm in part, reverse in part, and remand for a new trial.

Defendant, her son, and two others solicited investments in a business that proposed to provide twenty-four-hour per day childcare at two separate facilities. The prosecution asserted that the plan to operate day-care centers masked a fraudulent scheme to bilk investors of funds and to convert the funds to the conspirators' personal use.

The codefendants were tried separately from defendant. The jury convicted defendant for the crimes noted above, but acquitted her of other counts related to theft.

### I.

Defendant contends that the trial court erred in not requiring the prosecution to elect which act supported the counts of securities fraud and conspiracy to commit securities fraud or, alternatively, in not instructing the jury with a modified unanimity instruction that it must agree unanimously on the act or acts that constituted the charged offenses. We agree.

■ Defendant did not request an election, nor did she submit or request a modified unanimity instruction. Accordingly, we review the alleged defect for plain error. *See* Crim. P. 52(b); *People v. Williams,* 899 P.2d 306 (Colo.App.1995). Under this standard, the error must so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *People v. Kruse,* 839 P.2d 1 (Colo.1992).

■ To prevail on a claim of instructional plain error, the defendant must demonstrate not only that the instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to the conviction. *See People v. Garcia,* 28 P.3d 340 (Colo.2001).

### A.

■ When evidence of many acts is presented, any one of which could constitute the

offense charged, and there is a reasonable likelihood that jurors may disagree on the act the defendant committed, the trial court must take one of two actions to ensure jury unanimity. The court must either require the prosecution to elect the transaction on which it relies for conviction, or instruct the jury that to convict the defendant it must unanimously agree that the defendant committed the same act or committed all the acts included within the period charged. *Thomas v. People*, 803 P.2d 144 (Colo.1990); *People v. Estorga*, 200 Colo. 78, 612 P.2d 520 (1980).

■ The requirement of an election or a modified unanimity instruction assures that a conviction does not result from some members of the jury finding the defendant guilty of one act, while others convict based on a different act. *Roelker v. People*, 804 P.2d 1336 (Colo.1991); *see also* § 16–10–108, C.R.S.2001 (unanimity requirement for jury verdicts in criminal cases).

Here, the prosecution charged defendant with securities fraud under § 11–51–501(1)(c), C.R.S.2001, of the Colorado Securities Act (CSA), which provides, in pertinent part:

(1) It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly:

. . .

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

The prosecution presented evidence of numerous securities transactions involving at least twenty-five investors, concerning two proposed daycare facilities in different cities, and spanning a two-year period. The prosecution attempted to link defendant to all of these transactions, either as a principal or as a complicitor. The asserted transactions were stock sales and purchases, loans, and creation of at least one limited partnership. Funds were accepted in cash as well as by checks made out variously to entities created by the conspirators or to themselves individually. Defendant took part in soliciting some investors, but not others, and as to at least

one transaction there was no evidence that she had any direct contact with the investor.

■ Under these circumstances, there is a reasonable likelihood that the jury could have disagreed concerning the act or acts defendant committed. The jury instructions with respect to the charged count of securities fraud did not require the jury to so agree. *See People v. Simmons*, 973 P.2d 627 (Colo. App.1998) (absent election, general verdict form did not guarantee unanimity on felony menacing charge where evidence presented reasonable likelihood that jurors could disagree as to intended victim). Instead, the instructions required only that the jury determine whether "at or about the date and place charged," defendant had engaged in an "act, practice or course of business" that constituted securities fraud.

Moreover, the error was not harmless. This case is unlike cases in which the evidence, while referring to separate events, described repeated acts with respect to a single victim-witness, such that the jury would be likely to agree either that all of the acts occurred or that none occurred. *See Thomas v. People, supra* (error in not requiring election or modified unanimity instruction found harmless where charge limited to particular type of act and evidence presented was uniform in nature).

Here, there was substantial variety with respect to the nature of defendant's involvement in the subject transactions. Accordingly, there was not only evidence of multiple acts, but a substantial likelihood that jury members could disagree regarding which acts supported conviction.

■ With respect to the related charge of conspiracy to commit securities fraud, our analysis is the same. The elements of the crime include the commission of an overt act in pursuance of the conspiracy. *See* § 18–2–201, C.R.S.2001. Absent an election or a modified unanimity instruction, the jury could have convicted defendant while disagreeing about which act constituted the overt act.

■ The trial court is responsible for ensuring that the jury is properly instructed on the law and that a conviction on any count

is the result of a unanimous verdict. *See Kogan v. People*, 756 P.2d 945 (Colo.1988); *People v. Hardin*, 199 Colo. 229, 607 P.2d 1291 (1980). Because this error went to the very foundation of the jury's guilty verdicts on the charges of securities fraud and conspiracy, we conclude that it casts serious doubt on the reliability of the convictions on those charges, *see People v. Kruse, supra*, and there is thus a reasonable possibility that the error contributed to the conviction. Hence, we conclude there was plain error.

### B.

In so holding, we reject the People's argument that an election was not required because the prosecution pursued a "course of business" theory under § 11–51–501(1)(c) and did not pursue an "act or practice" theory. They assert that the particular instances of fraud with respect to each investor were in essence "alternative means" that contributed to the overall course of business fraud with which defendant was charged. *See People v. Taggart*, 621 P.2d 1375 (Colo.1981)(unanimity required with respect to crime charged, but not as to alternative means of committing crime).

However, this argument ignores the fact that the instruction on the securities fraud count allowed the jury to convict on the basis of *either* an act *or* a practice *or* a course of business. Moreover, the prosecution did not specifically limit its closing argument to a course of business theory, nor did it reject any other theory. Accordingly, even if we assume that unanimity would not be required to convict under a course of business theory, we cannot conclude that the jury convicted defendant solely on such a theory here.

### C.

Relying upon *People v. Freda*, 817 P.2d 588 (Colo.App.1991), the People also argue that a unanimity instruction was not required here because it is permissible for jurors to disagree on which evidence satisfies a particular element, so long as each juror agrees that each element is supported by proof beyond a reasonable doubt. We find *Freda* distinguishable.

The defendant in *Freda* was charged with four counts of offering a false instrument for recording. He sought an election concerning which entries on the offered forms constituted the element of material false information. The court held that election concerning the particular entries was not required, because the separate entries on the forms were not evidence of many acts, any one of which would constitute the offense charged. Instead, the operative act was that of offering the false instrument as a whole. Therefore, because each count specified the one false document that was offered for recording as the basis for the charge, and only one transaction was charged in each count, no election was required.

Here, however, it is the fraud committed in connection with a sale or an offer of securities that constitutes the operative act. *See* § 11–51–501(1). In this case, there was evidence of more than twenty potential transactions with more than two dozen different investors. Moreover, the prosecution charged, and defendant was convicted of, only one count of securities fraud and one count of conspiracy. *Cf. People v. Lawrence*, 55 P.3d 155 (Colo.App.2001)(instructions on thirty-four separate charges indicating that each count charged a separate and distinct offense, coupled with evidence that only one discrete act could constitute each crime, made modified unanimity instruction unnecessary).

Accordingly, defendant's conviction for securities fraud and conspiracy to commit securities fraud cannot stand, and retrial on those charges is required.

### II.

Because some of defendant's other contentions of error would preclude retrial, are likely to arise again on retrial, or relate to her remaining conviction, we address them here.

We first reject defendant's contention that the court erred in instructing the jury that it need not find that she knew a security was being offered or sold to be convicted of securities fraud.

Section 11–51–501, the specific provision under which defendant was charged, does not contain a culpable mental state for securities fraud. However, § 11–51–603(1), C.R.S. 2001, part of the CSA, provides that any person who "willfully" violates the provisions of § 11–51–501 commits a class three felony.

Concerning the elements of securities fraud, the court instructed the jury, as relevant here, that the prosecution must prove that defendant:

3. in connection with

4. the offer or sale of any security, .

5. directly or indirectly,

6. willfully

7. engaged in any act, practice or course of business

8. which operated as a fraud or deceit upon any person.

Concerning defendant's knowledge that the transactions involved securities, the court instructed the jury that:

The prosecution does not have to prove the defendant was aware that the stock ... was a security. Rather, the prosecution must prove beyond a reasonable doubt that what was being sold, shares of stock in [defendant's entity] was a security, whether or not the defendant knew it was a security.

Finally, an instruction on the culpable mental state provided:

A person acts "willfully" or "knowingly" with respect to conduct or to a circumstance described by a statute defining an offense when she is aware that her conduct is of such nature or that such circumstance exists. A person acts "willfully" or "knowingly" with respect to a result of her conduct when she is aware that her conduct is practically certain to cause the result.

Accordingly, under these instructions the willfulness element (number 6) did not apply to the "in connection with the offer or sale of any security" elements (numbers 3 and 4). See People v. Rodriguez, 914 P.2d 230 (Colo.1996)(statement of culpable mental state, when set apart in instruction on elements of crime, modifies all succeeding elements).

Defendant contends that she could not be convicted of the crime without a finding that she acted willfully with respect to each element of the offense, which, by her definition, requires the prosecution to prove that she knew the stock was a security. This appears to be an issue of first impression in Colorado.

When interpreting a statute, we are guided by the intent of the General Assembly, which directs us to look first to the plain meaning of the words employed. *People v. Banks*, 9 P.3d 1125 (Colo.2000). We resort to rules of statutory construction and legislative history only if the words employed give rise to more than one meaning. *See Terry v. People*, 977 P.2d 145 (Colo.1999).

The provision under which defendant was charged is divided into a general section describing the circumstances under which a violation can occur, including the use of a security, and a specific subsection describing the proscribed fraudulent conduct. *See* § 11–51–501(1)(c). On its face, it is unclear whether the penalty provision requires that willfulness apply only to the fraudulent conduct, or that it also apply to the attendant circumstances. *See Copeland v. People*, 2 P.3d 1283 (Colo.2000)(mens rea of statute may speak to conduct, circumstances, or result, or any combination thereof, but not necessarily to all three).

Our determination of this question is controlled by § 18–1–503(4), C.R.S.2001, which states:

When a statute defining an offense prescribes as an element thereof a specified culpable mental state, that mental state is deemed to apply to every element of the offense unless an intent to limit its application clearly appears.

In applying § 18–1–503(4), the supreme court has framed the issue as whether the General Assembly intended to apply the mens rea requirement to the subject element, in this case, knowledge that the particular investment vehicle is a security. In that regard, we consider the legislative history of the applicable statute, here the CSA. *See Copeland v. People, supra* (applying § 18–1–503(4), court found legislative history supported conclusion that legislature did not in-

tend arson statute's culpable mental state to apply to endangerment provision).

Among the legislative purposes of the CSA are the protection of investors from exploitation and the maintenance of public confidence in securities markets, and the CSA is to be broadly construed to effectuate its purposes. Section 11–51–101(2), C.R.S.2001; *Raymond Lee Organization, Inc. v. Securities Commission,* 36 Colo.App. 417, 543 P.2d 75 (1975), *rev'd on other grounds,* 192 Colo. 112, 556 P.2d 1209 (1976); *see also* § 2–4–203(1)(g), C.R.S.2001 (legislative declaration or purpose may be considered in determining legislative intent).

In addition, the CSA was adopted with reference to federal securities regulations, which it parallels, and the CSA directs coordination with the federal provisions. *See* § 11–51–101(3), C.R.S.2001; *Sauer v. Hays,* 36 Colo.App. 190, 539 P.2d 1343 (1975). The securities fraud provision now contained in § 11–51–501 is the analog of section 10(b) of the Federal Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b) (2001), and Securities & Exchange Commission Rule 10b–5, 17 C.F.R. 240.10b–5, and is identical to section 101 of the Uniform Securities Act. *See People v. Riley,* 708 P.2d 1359 (Colo.1985). Interpretations of federal law are persuasive in interpreting like state statutes. *See People v. Riley, supra; People v. Blair,* 195 Colo. 462, 579 P.2d 1133 (1978).

Federal securities fraud provisions, like Colorado's provision, are interpreted broadly and flexibly, so as to anticipate and encompass all the ingenious variations of securities fraud that may arise. *See United States v. Jensen,* 608 F.2d 1349 (10th Cir. 1979).

Requiring knowledge that the investment is a security would run counter to the legislative purposes of protecting investors and maintaining public confidence in securities markets, especially in light of the fact that the definition of a security embodies a flexible, rather than static, principle. *Raymond Lee Organization, Inc. v. Securities Commission, supra; see also* § 11–51–201(17), C.R.S.2001 (CSA definition of "security"). A defendant who has engaged in acts

of fraud and deceit is no less culpable for being unaware of the statutory definition of a security. *See United States v. Brown,* 578 F.2d 1280 (9th Cir.1978).

Likewise, federal and state authority is uniform in concluding that proof of knowledge that an investment is a security is not required to convict for "willful" securities fraud. *See United States v. Brown, supra; Buffo v. State,* 415 So.2d 1158 (Ala.1982); *State v. Irons,* 254 Neb. 18, 574 N.W.2d 144 (1998); *State v. Sheets,* 94 N.M. 356, 610 P.2d 760 (N.M.Ct.App.1980); *see also Buffo v. Graddick,* 742 F.2d 592 (11th Cir.1984)(proof of such knowledge not required for conviction on charge of aiding and abetting securities fraud).

For all of these reasons, we conclude that the General Assembly did not intend to apply the culpable mental state of willfulness to the security element. Accordingly, we perceive no error in the court's instructions. Thus, on retrial under similar factual circumstances, the instructions may again be given to the jury.

### III.

Defendant contends that the pattern complicity jury instruction given concerning the securities fraud charge erroneously contained the "all or part" language criticized by the court in *Bogdanov v. People,* 941 P.2d 247 (Colo.1997). In light of our conclusion that the case must be remanded for retrial on this count, we direct the trial court to give a modified instruction in accordance with that case.

### IV.

We reject defendant's contention that expert testimony given by the Colorado Commissioner of Securities should not have been admitted because it usurped the jury's factfinding function.

The Commissioner opined that a limited partnership agreement defendant entered into with certain investors constituted a security within the meaning of the CSA. He also testified that certain information known and not disclosed by defendant, including her

son's previous felony convictions related to theft, was material information that should have been disclosed to potential investors.

The commissioner was qualified without objection as an expert on the CSA, its application, and case law interpreting it. When the commissioner was asked to give his opinion regarding whether the limited partnership agreement constituted a security, defendant objected that the opinion was outside the area of expertise in which the commissioner was qualified. Abandoning that position on appeal, defendant now objects that the commissioner's opinions usurped the jury's function as factfinder.

Expert testimony is admissible when an expert's special knowledge will assist the trier of fact to understand evidence or to determine a fact in issue. CRE 702; *People v. Shreck,* 22 P.3d 68 (Colo.2001).

Opinion testimony that is otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. CRE 704. Moreover, whatever an expert or lay witness opines with respect to an ultimate issue, the jury retains its authority to determine the facts from the evidence and accept or reject such opinions. Accordingly, this concern for the integrity of the jury's function is unfounded. *See People v. Collins,* 730 P.2d 293 (Colo.1986).

### V.

Defendant contends that there was insufficient evidence to convict her on the charges of securities fraud, conspiracy, and sale of an unregistered security. We disagree.

In reviewing an insufficiency of the evidence claim, we view the evidence presented as a whole and in the light most favorable to the prosecution to determine whether the evidence is sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt. In this regard, the prosecution is entitled to the benefit of every reasonable inference that might be fairly drawn from the evidence. *Kogan v. People, supra.*

Here, there was substantial evidence presented that the proposal for twenty-four-hour daycare centers masked a conspiracy and actions on the part of defendant and her associates to defraud investors.

### A.

▪ Intent to defraud was evidenced by defendant's failure to disclose known, material facts to investors. Contrary to defendant's contention, such nondisclosure can be relevant to establish the guilt of a person charged with violating § 11–51–501(1)(c) (engaging in act, practice, or course of business), and it is not only relevant under § 11–51–501(1)(b), C.R.S.2001 (making untrue statement of material fact or omitting to state material fact). *See People v. Blair, supra* (a material misstatement or omission may also constitute an "act" for which a defendant may be liable).

Defendant knew of her son's criminal history. Yet, several witnesses testified that defendant did not disclose this information to them, despite having the opportunity to do so. There also was ample evidence that a reasonable investor would consider such information to be material.

Defendant also failed to disclose other material information that might have dissuaded individuals from investing, including her own prior eviction and adverse judgment for delinquent rent related to a prior daycare business, and a prior determination by government officials not to grant her a daycare facility license because of failure to meet applicable standards. *See Goss v. Clutch Exchange, Inc.,* 701 P.2d 33 (Colo.1985)(information must be disclosed to potential investors if a reasonable person would consider the matter important in making an investment decision).

Intent to defraud was likewise evidenced by defendant's transfer of investment funds to her personal bank account. Granting all inferences in favor of the prosecution, there was ample evidence that defendant did not intend to complete the daycare center, and that the concept of the daycare center was a ruse through which she and her associates converted investors' funds to their own use.

While defendant's part in the solicitation of investors was often limited, it was impor-

tant to the perpetration of the fraud. Defendant had worked in the childcare industry for several years, and she and her co-conspirators repeatedly touted her experience to investors. The evidence supported the conclusion that in several instances individual investment decisions were based partly on faith in her and her experience.

Moreover, on a few occasions defendant was directly responsible for the solicitation. With respect to one couple who invested, defendant solicited a loan that she personally guaranteed. She also executed a limited partnership agreement with the couple as part of a separate investment in the scheme. Defendant represented to several investors that a daycare facility in another city was open or was near completion. In fact, neither proposed facility was ever opened or completed.

Defendant was directly involved in an application for a Small Business Administration (SBA) loan that added credibility to the scheme. Defendant dealt directly with bankers regarding the SBA loan, which was earmarked for construction of one of the proposed facilities. Defendant signed loan documents as a corporate officer, and her efforts resulted in approval of the loan. It is reasonable to infer that the approval itself was useful to defendant and her associates in touting their investment scheme and drawing in more investors.

Also of importance, the loan was never finalized for lack of a daycare facility license. The prosecution presented evidence that, while defendant had previously held a license to operate a daycare facility, neither she nor anyone else ever filed an application for a license for the new facility. This failure to obtain government approval of a license, upon which the SBA loan hinged, supports the inference that defendant did not intend to open a daycare facility.

### B.

██ Much of the evidence supporting defendant's conviction for securities fraud also supports her conviction on the charge of conspiracy to commit securities fraud.

A person commits conspiracy to commit a crime if, with the intent to promote or facilitate its commission, he or she:

> agrees with another person or persons that they, or one or more of them, will engage in conduct which constitutes a crime or an attempt to commit a crime, or he [or she] agrees to aid the other person or persons in the planning or commission of a crime or of an attempt to commit such crime.

Section 18–2–201(1), C.R.S.2001.

Specifically, there was evidence that defendant solicited investors jointly with her associates and applied for the SBA loan with her son. Funds that defendant converted to her personal use were signed over to her by an associate, which evidences not only defendant's criminal intent, but an agreement among the co-conspirators to convert investment monies to their personal use.

Taken as a whole, the evidence thus supports the conclusion that defendant worked together with her associates to solicit investments for a nonexistent daycare center and also to conceal material information from investors.

### C.

██ With respect to the sale of an unregistered security, it was undisputed that none of the offerings made to investors, whether in the form of stock or other investment contracts, were properly registered. As noted, defendant solicited and was a signatory to one limited partnership agreement pursuant to which one couple invested funds. *See* § 11–51–201(17) (statutory definition of security includes an investment contract). Defendant was also involved in the solicitations of other investors, which resulted in the sale of unregistered securities.

Accordingly, the evidence was sufficient to support a conclusion by a reasonable person that defendant was guilty of all three offenses beyond a reasonable doubt.

### VI.

We next address defendant's contention that the trial court erred in admitting certain statements made by her son. Because we

conclude that the evidence presented met the standard for admission of statements by a co-conspirator, we reject defendant's argument.

An out-of-court statement offered for the truth of the matter asserted is not hearsay if it is offered against a party as a statement made by a co-conspirator during the course of and in furtherance of the conspiracy. The contents of the statement may be considered to establish the existence of a conspiracy and participation by the party against whom the statement is offered. However, there must be corroborating evidence apart from the contents of the statement itself. CRE 801(d)(2)(E); *People v. Montoya*, 753 P.2d 729 (Colo.1988).

■ In considering whether to admit a co-conspirator's statement, the trial court acts as a fact finder. The proponent of the statement bears the burden to establish by a preponderance of the evidence that the party against whom the statement is offered and the declarant were members of a conspiracy and that the declarant's statement was made during the course of and in furtherance of the conspiracy. *People v. Montoya, supra.*

We review the trial court's ruling on the admission of evidence for abuse of discretion. *People v. Eppens*, 979 P.2d 14 (Colo.1999).

■ Here, a prosecution witness testified to her conversations with defendant's son regarding investment in the daycare center scheme. The trial court reviewed evidence already presented, which included the evidence described above, and concluded that there was sufficient evidence of a conspiracy of which defendant and her son were members. The record supports that determination.

Moreover, the statements to which the witness testified concerned an investment solicitation, which occurred in the course of and furthered the conspiracy. We therefore conclude that the trial court properly admitted the evidence.

## VII.

Defendant contends the trial court erred in admitting evidence of other acts under CRE 404(b). We conclude that the evidence was properly admitted.

■ An accused should be tried only for the offense for which he or she stands charged. *Stull v. People*, 140 Colo. 278, 344 P.2d 455 (1959). Thus, evidence of other wrongs or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity with that character. CRE 404(b).

■ Evidence of uncharged acts may be admissible for purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but evidence of prior acts is not admissible if its only relevance is to prove the propensity of an accused to commit crimes. *People v. Spoto*, 795 P.2d 1314 (Colo.1990).

However, when evidence is offered not under CRE 404(b), but under another evidentiary theory that allows its admission, a trial court may properly admit the evidence. *See People v. Cauley*, 32 P.3d 602 (Colo.App. 2001); *see also United States v. Williams*, 900 F.2d 823, 825 (5th Cir.1990)(when the evidence of other acts and the evidence of the crime charged are "inextricably intertwined," both acts are part of a "single criminal episode," or the other acts were "necessary preliminaries" to the crime charged, the other acts evidence is considered to be intrinsic to the crime, and thus not subject to scrutiny under rule 404(b)).

Here, the challenged evidence includes the criminal history of defendant's son, including felony convictions for theft and attempted theft; rejection of defendant's previous request for a daycare facility license because of her failure to meet government standards in the operation of her daycare business; defendant's eviction from the location of her prior daycare business; defendant's default on a prior business loan; a judgment entered against defendant for delinquent rent at the location of her prior daycare business; and a default judgment entered against defendant as the guarantor of a bail bond.

■ The prosecution offered the evidence to show that defendant concealed material information to advance a fraudulent course of

business under § 11–51–501(c). A misrepresented or omitted fact is considered material if there is a substantial likelihood that a reasonable investor would consider the matter important in making an investment decision. *See Goss v. Clutch Exchange, Inc., supra.*

■ In our view, this evidence was admissible for the cited purpose. A potential investor would deem it material, for example, if the offeror of securities had a prior felony conviction, *see State v. Stuber*, 25 Kan.App.2d 254, 962 P.2d 1104 (1998), or if he or she had been involved in previous litigation. *See United States v. Hilgeford*, 7 F.3d 1340 (7th Cir.1993)(evidence of prior litigation admitted as intrinsic evidence because it showed defendant's willfulness, an element of filing false tax returns).

■ We reach the same conclusion concerning testimony regarding the personal use of investor funds by co-conspirators, the son's solicitation of an investor who was not otherwise connected to defendant, and an exhibit that summarized investments in the proposed daycare facilities, including investments involving some investors who did not testify at trial. This was not evidence of other crimes and acts. Rather, the evidence went to prove defendant's commission of the acts that constituted the crimes charged in this case.

The testimony regarding conversion by defendant's associates of investment funds went directly to prove the existence of a conspiracy to defraud investors and fraud or deceit in the course of business. Other evidence showing that defendant herself converted investment monies to her own use corroborated the existence of the conspiracy and her participation in it. In one instance, funds were transferred from a co-conspirator to her, and she deposited those funds into her own account.

Under a theory of either conspirator liability or accomplice liability, defendant could be responsible for the acts of her associates. *See* §§ 18–2–201, 18–1–603, C.R.S.2001. Thus, evidence of her son's solicitation of an investor was relevant even though defendant apparently had no contact with her.

The summary of investments was not objectionable on the ground that it constituted evidence of other bad acts. The summary related entirely to investments in the proposed daycare facilities at issue in this case and to the fraudulent scheme of which defendant was a part.

Moreover, even if we were to conclude that CRE 404(b) is applicable here, *see United States v. Murphy*, 935 F.2d 899 (7th Cir.1991)(material information not disclosed treated and admitted under rule 404(b)), we would reach the same conclusion.

■ Pursuant to CRE 404(b), we undertake a four-part analysis to determine whether evidence of other bad acts is admissible. The evidence must relate to a material fact, and it must have logical relevance. The logical relevance must be independent of the inference that defendant has a propensity to commit crime. Finally, the evidence, if otherwise admissible, should be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *People v. Spoto, supra.*

Here, defendant could be found guilty of securities fraud if she concealed material information from prospective investors. *See* § 11–51–501(1)(c); *People v. Blair, supra.*

■ The challenged evidence consists of information that was material under the CSA definition. *See Goss v. Clutch Exchange, Inc., supra.* Accordingly, the evidence was material and logically relevant under CRE 404(b). Its logical relevance was independent of the prohibited inference of propensity because it went to the existence of, and defendant's knowledge of, these prior bad acts, which she nevertheless failed to disclose to potential investors. Balancing the probative value against the danger of unfair prejudice, we conclude that the probative value of this evidence was substantial, as it went to the foundation of the fraud and defendant's involvement. The potential for unfair prejudice, although not negligible given the nature of the evidence, did not substantially outweigh the evidence's probative value.

Accordingly, we conclude that the trial court did not err in admitting this evidence, even if CRE 404(b) analysis is applied.

Defendant additionally contends that to the extent that the evidence was properly admitted, it should have been accompanied by a limiting instruction. However, when there is no objection to the evidence as it is being presented, much less a request for a limiting instruction, the trial court's failure to issue one sua sponte does not amount to plain error. See People v. Taylor, 804 P.2d 196 (Colo.App.1990).

In sum, the trial court did not err in admitting the evidence.

## VIII.

Defendant next contends the cumulative effect of the foregoing alleged errors requires reversal of her conviction. In light of our reversal of defendant's convictions for securities fraud and conspiracy, we need not address this contention as it relates to those charges. Concerning the unregistered securities conviction, we disagree.

Numerous formal irregularities, each of which might be deemed harmless, may in the aggregate show the absence of a fair trial, in which event reversal is required. People v. Roy, 723 P.2d 1345 (Colo.1986). However, this is not such a case.

A defendant, although not entitled to a perfect trial, has a constitutional right to receive a fair trial. Under the facts of this case, we conclude that the cumulative effect of the other alleged errors did not substantially prejudice defendant's right to a fair trial. See Gould v. People, 167 Colo. 113, 445 P.2d 580 (1968).

## IX.

Concerning her postconviction motion, defendant requests reversal of her convictions and a new trial on the basis of ineffective assistance of counsel. We need not address the allegation as it relates to the counts of securities fraud and conspiracy. With respect to the sale of an unregistered security, the record supports the trial court's finding that defendant failed to demonstrate prejudice, and thus reversal is not required.

To prevail on a claim of ineffective assistance of counsel, a defendant bears the burden of proving that trial counsel's performance was deficient and that he or she was prejudiced thereby. Concerning prejudice, there must be a reasonable probability that, but for that deficient performance, the result of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Davis v. People, 871 P.2d 769 (Colo.1994); People v. Palmer, 888 P.2d 348 (Colo.App.1994). And, when there is no demonstration of prejudice, a claim of ineffective assistance may be resolved on that basis alone. See People v. Palmer, supra.

Here, defendant has failed to show a reasonable probability that she would not have been convicted of sale of an unregistered security but for the alleged ineffective assistance of trial counsel.

As previously discussed, there was sufficient evidence to convict defendant. She contends that certain pieces of evidence might have been excluded if a more vigorous defense had been mounted. However, much of what defendant contends was excludable is the "other bad act" evidence, which was properly admitted.

Defendant does not call into question the evidence showing that the stock and other securities that were offered and sold were not registered. Defendant also has not identified any theory trial counsel could have pursued that would have excluded the bulk of the evidence describing her role in the sale of unregistered securities.

Defendant argues that she was exempt from prosecution for the limited partnership agreement because the agreement was not a public offering. We disagree.

The CSA exempts nonpublic offering transactions from criminal liability under the provision that proscribes the sale of unregistered securities. Section 11–51–308(1)(i), C.R.S.2001.

Whether the nonpublic offering exemption is available is a question of fact to be

determined upon consideration of all surrounding circumstances. *People v. Morrow,* 682 P.2d 1201 (Colo.App.1983). The question is whether the offerees would have benefited from the information supplied in a registration statement. *Lowery v. Ford Hill Investment Co.,* 192 Colo. 125, 556 P.2d 1201 (1976).

Here, defendant has not explained what evidence was presented, or could have been presented, that would support a finding that the limited partnership agreement transaction was a nonpublic offering. Having failed to identify what trial counsel could have done to prevail on this issue, defendant has failed to establish prejudice.

Moreover, even if we assume that the limited partnership transaction was exempt, there were numerous other transactions involving the sale of unregistered securities for which evidence was presented, linking defendant either as a principal or as a complicitor. Under the circumstances, defendant has failed to meet her burden to show prejudice.

### X.

Finally, defendant contends that, at the hearing on her postconviction motion, the court limited the time for her presentation such that she was not allowed to testify. She requests that we direct the trial court to reopen the hearing to receive further testimony. However, even if we assume, without deciding, that the court abused its discretion in this regard, we conclude that any error is harmless.

An error is harmless if it does not affect a substantial right of a party. Error affects a substantial right when it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the trial itself. *Salcedo v. People,* 999 P.2d 833 (Colo.2000); *see also* CRE 103(a); C.A.R. 35(e).

Here, defendant sought to testify on her own behalf. The trial court, citing the lateness of the hour and noting delays caused by defendant and defense counsel, allotted defendant a total of five minutes within which to present her testimony as well as any closing argument. Defendant elected to forgo testifying and instead used the time to present argument.

Defendant later submitted an offer of proof that she would have testified to trial counsel's failure to meet with her and fully to investigate and vigorously pursue her defense. However, evidence of trial counsel's inadequacies in this area was already established through counsel's own testimony. Accordingly, the evidence would have been cumulative and properly excluded. *See* CRE 403 (relevant evidence may be excluded if its probative value is substantially outweighed by the danger of needless presentation of cumulative evidence). Moreover, defendant's proposed testimony would not have addressed any issue with respect to prejudice. Accordingly, any error was harmless.

The judgment is affirmed as to the conviction for sale of an unregistered security, as is the order denying postconviction relief. The judgment is reversed as to the convictions for securities fraud and conspiracy to commit securities fraud, and the case is remanded to the trial court for a new trial on those counts.

Judge KAPELKE and Judge VOGT concur.