**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**William DESTRO, Defendant–Appellant.**

**No. 03CA1261.**

Colorado Court of Appeals, Div. I.

May 29, 2008.

Certiorari Dismissed June 11, 2009.

John W. Suthers, Attorney General, Patricia R. Van Horn, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Pamela A. Dayton, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge HAWTHORNE.

Defendant, William Destro, appeals the trial court's judgment entered upon jury verdicts finding him guilty of violating the Colorado Organized Crime Control Act (COCCA), conspiracy, theft, and securities fraud. Defendant also appeals the sentences imposed thereon. We affirm.

## I. Background

This appeal involves the following two separate transactions.

### A. The WIIN Program

In 1997, defendant, along with his co-defendants, formed a company called Women's International Investment Network (WIIN). The company was created to purchase real property and profit from the popular practice of "flipping" the property, a process which

entails holding the property for a short time, then reselling it for a profit. WIIN purchased property from sellers willing to allow it to pay part of the purchase price with a secured promissory note. WIIN would then resell the property to participating buyers, with WIIN furnishing the down payment and taking a second mortgage on the property in that amount. The participating buyers paid the balance of the purchase price by obtaining a mortgage loan.

According to the WIIN brochure, participating buyers would receive the tax benefits from owning the property and a cash fee equal to three percent of the "net loan" obtained. In addition, WIIN would lease the property from the buyers, make monthly payments equal to the amount of the mortgage payment, and maintain the property. Further, WIIN agreed to place eleven months of mortgage payments in escrow. The buyers signed a contract agreeing to sell the property back to WIIN in a year, at which time WIIN would sell the property and split any profit with them.

None of the participating buyers was informed that WIIN's principals, including defendant, had been involved in several other failed real estate ventures, or that there were any past or pending lawsuits against them. When WIIN failed to make the agreed monthly payments on the properties in the program, those properties went into foreclosure, and the buyers' credit was adversely affected.

Defendant was indicted on multiple counts, including conspiracy, securities fraud, and violation of COCCA. He was tried separately from his co-defendants, and the jury found him guilty of one count of conspiracy, ten counts of securities fraud, and two counts of violating COCCA. His sentences totaled twenty years, to be served in the Department of Corrections (DOC).

### B. The Hone Transaction

In 1996, defendant purchased a home from the Hones. At closing, defendant signed a promissory note for $25,000 in favor of the Hones and secured it with an assignment of his proceeds from treasury bonds valued at $25,000. The note was due and payable on August 16, 1999. If defendant did not pay the note in full on that date, the Hones would receive the proceeds from the sale of the bonds.

In addition, defendant gave the Hones an unsecured promissory note in the amount of $11,820 for the purchase of furniture and other items. Payment on this note was also due on August 16, 1999.

Though defendant purchased treasury bonds in the amount of $25,000 on the date of the closing, he sold them ten days later. When he failed to make the mortgage payments on the home, the lender instituted foreclosure proceedings.

Despite his repeated assurances, defendant failed to pay the two notes to the Hones. He was subsequently tried and found guilty by a jury of one count of theft. He received a sentence of ten years in the DOC, to be served concurrently with the sentences entered on the convictions involving the WIIN program.

### II. Jury Instructions

Defendant first contends that the trial court erroneously instructed the jury. We disagree.

 Because defendant did not object to the jury instructions, we review this contention for plain error only. *See People v. Miller,* 113 P.3d 743, 749–50 (Colo.2005). Plain error is both obvious and substantial. For error to rise to this level, it must have so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.*

### A. Securities Fraud Instructions

 Defendant argues that the trial court erred in not instructing the jury that in order to convict him of securities fraud, it must find that he was aware that he was dealing with securities. We disagree.

Section 11–51–501, C.R.S.2007, is the securities fraud statute under which defendant was charged. Though section 11–51–501 does not contain the requisite mental state for violation of that statute, section 11–51–603(1), C.R.S.2007, provides that securities

fraud is a class three felony when a person "willfully violates the provisions of section 11–51–501."

Jury instruction number 18 stated, in pertinent part,

The elements of the crime of Securities Fraud ... are as follows:

(1) That the Defendant,

. . .

(3) in the connection with the offer, sale, or purchase of any security,

(4) directly or indirectly,

(5) willfully,

(6) either:

(a) engaged in an act, practice or course of business which operated or would have operated as a fraud or deceit upon a person; or

(b) made an untrue statement of material fact, or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

Defendant complains that instruction number 18 did not apply "willfully" to the element that the security fraud occur "[i]n connection with the offer, sale or purchase of any security." He also contends instruction number 21 incorrectly told the jury that "the prosecution does not have to prove the defendant was aware that the real estate investment he was offering was a security."

We conclude that the jury instructions were not erroneous. Proof of knowledge that an investment is a security is not required for a conviction of "willful" securities fraud. *See People v. Rivera*, 56 P.3d 1155, 1162–63 (Colo.App.2002) (analyzing securities fraud statutes and concluding that General Assembly "did not intend to apply the culpable mental state of willfulness to the security element"); *see also People v. Pahl*, 169 P.3d 169, 185–86 (Colo.App.2006) (applying *Rivera*).

## B. COCCA and Conspiracy Instructions

Defendant next argues that jury instruction number 21 conflicts with the culpable mental states required for his convictions of the violation of COCCA and conspiracy. We are unpersuaded.

Jury instruction number 21 informed the jury:

[T]he prosecution does not have to prove the defendant was aware that the real estate investment that he was offering was a security. Rather, the prosecution must prove beyond a reasonable doubt that what was being sold was a security, whether or not the defendant knew it was a security.

This is an accurate statement of the law. *See Rivera*, 56 P.3d at 1162–63.

The elements of the crime of a violation of COCCA, as contained in instruction numbers 13 and 14, are that defendant "*knowingly* conducted or participated, directly or indirectly, in [an] enterprise, through a pattern of racketeering activity" and "*knowingly* acquired or maintained, directly or indirectly, an interest in or control of any enterprise or real property through a pattern of racketeering activity" (emphasis added). *See also* § 18–17–104, C.R.S.2007. A person acts knowingly with respect to conduct "when he is aware that his conduct is of such nature or that such circumstance exists." § 18–1–501(6), C.R.S.2007. The jury was further instructed that acts of racketeering activity, two or more of which constitute a pattern, could include the acts of securities fraud with which defendant was charged.

Instruction number 16 stated that to find defendant guilty of conspiracy, the jury must find that he, "*with the intent* to promote or facilitate the commission of ... Securities Fraud, agreed with another person or persons that they, or one or more of them, would engage in conduct which constitutes a crime or an attempt to commit a crime" (emphasis added). *See also* § 18–2–201, C.R.S.2007. A person acts with intent "when his conscious objective is to cause the specific result proscribed by the statute defining the offense." § 18–1–501(5), C.R.S.2007.

■ Defendant argues that "one cannot knowingly engage in a pattern of securities fraud or act with the specific intent to commit securities fraud if one is unaware that one is dealing with a security." However,

*Rivera* held that a defendant did not have to know he or she was offering a security to commit securities fraud. *Rivera,* 56 P.3d at 1163 ("A defendant who has engaged in acts of fraud and deceit is no less culpable for being unaware of the statutory definition of a security."). It follows that so long as defendant willfully engaged in certain acts, and those acts amounted to securities fraud, it was not necessary that defendant know he was dealing with a security to (1) knowingly engage in a pattern of racketeering activity, namely, acts of securities fraud, or (2) have the specific intent to promote or facilitate the commission of securities fraud.

Thus, because both the COCCA and conspiracy counts were based upon acts of securities fraud, the jury could convict defendant of those counts without having to find that he knew he was dealing with a security. Therefore, we find no error, much less plain error, in the jury instructions as given. *See Miller,* 113 P.3d at 749–50.

### III. Expert Testimony

■ Defendant next contends that the trial court erred in allowing a former Commissioner of the Colorado Division of Securities to offer expert testimony on the issue of whether the WIIN agreement was an investment contract, and thus a security. We disagree.

Expert witness testimony is permitted when scientific, technical, or other specialized knowledge "will assist the trier of fact to understand the evidence or to determine a fact in issue." CRE 702.

■ Opinion testimony that is otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. CRE 704. However, an expert may not "usurp the function of the court by expressing an opinion of the applicable law or legal standards." *Quintana v. City of Westminster,* 8 P.3d 527, 530 (Colo.App.2000)

■ A trial court has broad discretion to determine the admissibility of expert testimony pursuant to CRE 702, and we will not overturn its ruling absent an abuse of that discretion. *See People v. Prendergast,* 87 P.3d 175, 181 (Colo.App.2003).

Defendant's argument is virtually the same as that made and rejected in *Rivera,* 56 P.3d at 1164, where the division concluded, "[W]hatever an expert ... witness opines with respect to an ultimate issue, the jury retains its authority to determine the facts from the evidence and accept or reject such opinions. Accordingly, [defendant's] concern for the integrity of the jury's function is unfounded."

Here, the People's expert testified that in his opinion, (1) the WIIN program devised by defendant met the four-part test for an investment contract, *see Lowery v. Ford Hill Investment Co.,* 192 Colo. 125, 556 P.2d 1201 (1976); (2) as an investment contract, the WIIN program constituted a security under Colorado law; and (3) defendant was required to make certain disclosures to his investors. However, the expert offered no opinion regarding defendant's guilt or his knowledge whether the WIIN program was governed by securities law, and the jury was instructed by the court that it was free to reject the expert's opinion and that it should follow the law as given by the court. *See People v. Thompson,* 950 P.2d 608, 614 (Colo. App.1997) (absent a showing to the contrary, appellate court presumes jury followed trial court's instructions).

Defendant argues that the importance of the expert's former position presented an "intolerable risk that the jury would not feel free to reject his opinion." However, defendant did not object to the expert's testimony on this basis at trial. In any event, we are not persuaded by it. *See Pahl,* 169 P.3d at 182 (concluding there was no "intolerable risk" the defendant was convicted because of former commissioner's opinions that transaction was a security and that the defendant's omissions of fact were material where under trial court's instructions, jury was free to reject those opinions).

Therefore, we conclude that the trial court did not abuse its discretion in admitting the expert's testimony. *See Prendergast,* 87 P.3d at 181.

### IV. Sufficiency of the Evidence

Next, defendant contends that the trial court erred in denying his motion for judg-

ment of acquittal because there was insufficient evidence to prove him guilty beyond a reasonable doubt. We disagree.

■ "When the sufficiency of the evidence is challenged on appeal, the reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt." *People v. Stanley*, 170 P.3d 782, 790 (Colo.App.2007) (quoting *People v. McIntier*, 134 P.3d 467, 471 (Colo.App.2005)).

### A. Securities Fraud

■ Defendant argues that the WIIN program does not meet the investment contract test of a security, and thus, the evidence was insufficient to support his conviction for securities fraud.

■ The term "security" includes an investment contract. § 11–51–201(17), C.R.S. 2007. An investment contract is "(1) a contract, transaction, or scheme whereby a person invests his or her money (2) in a common enterprise and (3) is led to expect profits derived from the entrepreneurial or managerial efforts of others." *Toothman v. Freeborn & Peters*, 80 P.3d 804, 811 (Colo.App. 2002). The third-party efforts must be significant, "that is, essential managerial efforts that affect the success or failure of the enterprise." *People v. Hoover*, 165 P.3d 784, 793 (Colo.App.2006).

> It is unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly . . . [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading. . . .

§ 11–51–501(1)(b).

Defendant attempts to distinguish WIIN, the property owner, from WIIN, the investment program, by arguing that the buyers participating in the WIIN program did not invest money. However, to purchase the properties, the buyers had to participate in the investment program. For example, the buyers would allow WIIN to locate renters for the properties and maintain them, and would agree to sell the properties back to WIIN after one year. The money that the buyers invested was the proceeds of the mortgage loans they obtained on the properties.

Defendant also characterizes WIIN's involvement in the transaction as minimal, stating that "WIIN was merely a tenant with a small second mortgage and a right to repurchase the property when the owner decided to sell," and that "the participating buyers' expectation of profit was based not on WIIN's essential managerial efforts but rather, on the expectation that the market value of the real estate will increase over time and then be sold for a higher price than that for which it was purchased." However, these statements are belied by representations in the WIIN program brochure, such as, "During the term of the lease-back, you, as the owner, have no concerns as to the maintenance and upkeep of the property as our lease requires that [WIIN] is totally responsible for all cost[s] of maintenance, up-keep, improvements, repairs[,] and continuing management."

WIIN also took sole responsibility for finding a qualified tenant to lease the property. Although part of the benefit to the buyer was touted as the appreciation in property value, such increase could be negatively affected if the property were not properly maintained, and the buyer would likely realize that appreciation only if rental from WIIN's sublease was adequate to keep the mortgage loan current until the property's value had appreciated and it could be sold. The fact that the buyers, as the property owners, had the usual rights of ownership does not change the fact that the buyers were led to expect profits derived mainly from WIIN's managerial efforts. *See Toothman*, 80 P.3d at 811.

Given this evidence, along with the expert testimony that the WIIN program met the definition of an investment contract, we conclude that the evidence was sufficient for the jury to find defendant guilty of securities fraud. *See Stanley*, 170 P.3d at 790.

## B. COCCA

Defendant next contends that the evidence was insufficient to support the jury's finding him guilty of violating COCCA. He argues that (1) there was insufficient evidence that the WIIN program constituted a security, and (2) he did not know he was dealing with a security. However, we have previously concluded that sufficient evidence was presented that the WIIN program was an investment contract and thus, a security, and that defendant did not have to know he was dealing with a security to be convicted of securities fraud. Thus, we reject defendant's contention.

## C. Conspiracy

Defendant next contends that "no rational trier of fact could find that each of the essential elements of ... conspiracy had been proven beyond a reasonable doubt." He bases this contention on his previous argument regarding the application of specific intent to the underlying crime of securities fraud. Because we have already addressed and rejected that argument, we also reject defendant's related contention in the context of sufficiency of the evidence.

## D. Theft

■ Defendant next argues there was insufficient evidence that he had the required mental state for his conviction of theft from the Hones. We disagree.

A person commits theft when he or she "knowingly obtains or exercises control over anything of value of another ... by threat or deception" and "[i]ntends to deprive the other person permanently of the use or benefit of the thing of value" or "[k]nowingly uses, conceals, or abandons the thing of value in such manner as to deprive the other person permanently of its use or benefit." § 18–4–401(1)(a)–(b), C.R.S.2007. Here, the thing of value is the Hones' interest in real property.

■ Evidence of a defendant's intent is generally proved by circumstantial or indirect evidence. *People v. Collie*, 995 P.2d 765, 773 (Colo.App.1999). The fact finder may infer a defendant's intent to cause the natural and probable consequences of unlawful voluntary acts from the defendant's conduct and the circumstances of the case. *See People v. Madison*, 176 P.3d 793, 798 (Colo.App. 2007); *People v. Liggett*, 114 P.3d 85, 90 (Colo.App.2005), *aff'd*, 135 P.3d 725 (Colo. 2006).

Defendant maintains that his actions after the notes' maturity date were indicative of his lack of intent to permanently deprive the Hones of their funds. However, there was evidence that defendant apologized to the Hones, explaining that he had personal difficulties that prevented repayment. His continued failure to repay the notes, despite alleged attempts, also permitted the inference that defendant was trying to evade the debt. There was also evidence that when defendant failed to repay the notes, the Hones attempted to contact him, but he had moved without informing them of his new address. The Hones also discovered that defendant sold the bonds which secured one of the notes ten days after he purchased their property. It was only when the Hones located him and threatened legal action that defendant finally responded.

We therefore conclude that the evidence is sufficient to support the jury's finding that defendant was guilty of theft. *See Stanley*, 170 P.3d at 790.

## V. Sentencing

■ Finally, defendant contends that the trial court abused its discretion in sentencing him by giving improper weight to punitive factors and in excluding other factors. Again, we disagree.

■ The trial court is afforded wide latitude and discretion in imposing a sentence. *People v. Martinez*, 179 P.3d 23, 25 (Colo.App.2007). In exercising its sentencing discretion, the trial court must consider "the nature of the offense, the character and rehabilitative potential of the offender, the development of respect for the law, the deterrence of crime, and the protection of the public." *Id.* at 25–26. However, the trial court may not unduly emphasize any one of these factors to the exclusion of the others. *Id.* at 26.

■ If the sentence is within the range required by law, is based on appropriate considerations as reflected in the record, and is factually supported by the circumstances of the case, we must uphold it. *See People v. Howell,* 64 P.3d 894, 898 (Colo.App.2002).

At defendant's sentencing, he expressed his remorse, and his children made statements on his behalf. The court also heard statements from the victims in the case. Although the court stated that it "should rightfully focus on the punitive aspect of sentencing," it also said it believed defendant "is sincere and wants to repay the damages that were caused." The trial court also noted that it had read defendant's presentence report, as well as letters submitted on his behalf.

The record thus reveals that the trial court considered all the appropriate sentencing factors and did not abuse its discretion in sentencing defendant. *See Martinez,* 179 P.3d at 25–26; *Howell,* 64 P.3d at 898.

The judgment and sentences are affirmed.

Judge ROTHENBERG and Judge TERRY concur.