NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0617n.06

Case No. 09-5853

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Aug 25, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| MELVIN L. CROMER, | ) | DISTRICT OF KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE: BATCHELDER, Chief Judge; ROGERS and SUTTON, Circuit Judges.

ALICE M. BATCHELDER, Chief Judge. A jury convicted Melvin Cromer on two counts: conspiracy to distribute and to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846, and traveling in interstate commerce to distribute methamphetamine in violation of 18 U.S.C. § 1952. The district court sentenced him to 169 months in prison on one count and 60 months on the other, to run concurrently. Cromer now appeals.

I.

On November 1, 2006, Cromer and his friend, John Watkins, were stopped by a police officer in Georgia because their vehicle was not displaying a registration plate. The vehicle belonged to Watkins, who was sitting in the passenger seat; Cromer was driving. The men were traveling from Kentucky. During the course of the traffic stop, the police officer asked the men what brought them to Georgia. When they responded with conflicting stories, the officer called a K-9 unit to search the car. Before the K-9 unit arrived, Watkins told the officer that there was methamphetamine in the

glove box. Upon retrieving the methamphetamine (620.0 grams), the officer arrested both Watkins and Cromer.

Based in part on their knowledge of Cromer's arrest in Georgia, federal authorities in Kentucky applied for and received a warrant to search Cromer's Kentucky residence. While Cromer was still in custody in Georgia, the authorities searched his residence and discovered, among other things, a refurbished 1971 Plymouth Duster ("Duster") in Cromer's garage. The officers seized the Duster even though the warrant did not specifically authorize that action.

Georgia subsequently dismissed the charges against Cromer because the supervising police officer failed to appear at the probable cause hearing. Upon returning to Kentucky, Cromer went to the DEA's office, seeking the return of the Duster. The agents were busy when he arrived, but he agreed to wait to speak to someone. Two agents eventually led Cromer to an interview room near the lobby, where they told him that they could not release his car and that he would have to file a claim through the appropriate administrative procedures. They then asked him about his recent arrest in Georgia, prefacing their questions with assurances that Cromer was free to leave at any time and did not have to answer them. Cromer told the agents that he had been traveling with Watkins to repair the wheel bearings on Watkins' car. He also discussed his relationship with Watkins and mentioned that Watkins occasionally gave him methamphetamine as payment for debts Watkins owed him.

On April 26, 2007, police interviewed Watkins pursuant to a cooperation agreement. Watkins told the police that he and Cromer had traveled to Georgia to buy methamphetamine, which they planned to bring back to Kentucky for distribution. He explained that because he had bad vision

2

and did not want to risk driving himself, he hired Cromer to drive. Several months later, police also interviewed a man named Michael Joe McFerron, who consented to discuss his knowledge of the drug-trafficking activities of Watkins, Cromer, and others. McFerron described various methamphetamine transactions in which Cromer and Watkins had been involved.

A Kentucky grand jury indicted Cromer and Watkins on various drug charges. Watkins pled guilty and subsequently cooperated with the government. Cromer pled not guilty, proceeded to jury trial, and was convicted of conspiracy to possess with intent to distribute and to distribute methamphetamine (Count 1), and traveling in interstate commerce with intent to distribute methamphetamine (Count 2). On both counts, Cromer's offense level was 34 and his criminal history category was I, resulting in a Guidelines range of 151 to 188 months in prison. The statutory maximum for Count 2 was 60 months in prison. The district court sentenced Cromer to 169 months in prison on Count 1 and 60 months in prison on Count 2, to be served concurrently.

Cromer filed this timely appeal in which he challenges various aspects of his conviction and sentence.

## II.

Cromer first argues that the district court's jury instructions were erroneous because they did not require the jury to reach a unanimous verdict on Count 1. Specifically, he takes issue with the district court's instruction that:

> Count 1 of the indictment . . . accuses the defendant of committing the crime of conspiracy in more than one possible way. The first is that he possessed with the intent to distribute . . . methamphetamine. The second is that he distributed . . . methamphetamine. The government does not have to prove both of these for you to return a guilty verdict on this charge. Proof beyond a reasonable doubt on any one

of these is enough. But in order for you to return a guilty verdict, all 12 of you must agree that one of these, at least one of these, has been proved. However, all of you need not agree that the same one has been proved.

"This court reviews jury instructions *as a whole* to determine whether they fairly and adequately inform the jury of relevant considerations and explain the applicable law to assist the jury in reaching its decision." *United States v. Ham*, 628 F.3d 801, 810 (6th Cir. 2011) (emphasis in original) (internal quotation marks omitted). Reversal is warranted "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *United States v. Harrod*, 168 F.3d 887, 892 (6th Cir. 1999) (internal quotation marks omitted).

The jury instructions were not erroneous. A conspiracy charge under 21 U.S.C. § 846 requires the government to prove three elements beyond a reasonable doubt: "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996); *see also* 21 U.S.C. § 846. Although a jury must unanimously find that the government has proven each element of a crime, it "need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element, say, which of several possible means the defendant used to commit an element of the crime." *Richardson v. United States*, 526 U.S. 813, 817 (1999). In the context of § 846, therefore, the jury need only unanimously decide that there was an agreement to violate drug laws—in this case, 21 U.S.C. § 841(a)(1). Section 841(a)(1) criminalizes both possession with intent to distribute and distributing a controlled substance. Proof of a conspiracy to possess with intent to distribute methamphetamine and to distribute methamphetamine are simply different means of establishing a violation of § 846.

Furthermore, a defendant generally is not entitled to a specific unanimity instruction unless "1) a count is extremely complex, 2) there is variance between the indictment and the proof at trial, or 3) there is a tangible risk of jury confusion." *United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir. 1992). None of those conditions is met in this case, and Cromer therefore was not entitled to a specific unanimity instruction.

### III.

In a similar vein, Cromer argues that his indictment was duplicitous because it charged two conspiracy offenses. Count 1 charged him with violating 21 U.S.C. § 846 by conspiring to 1) possess with intent to distribute methamphetamine and 2) distribute methamphetamine. [R. 106 (Superceding Indictment) at 1.] Whether an indictment is duplicitous is a legal question that we review de novo. *United States v. Davis*, 306 F.3d 398, 415 (6th Cir. 2002).

"An indictment is duplicitous if it sets forth separate and distinct crimes in one count." *Id.* Generally, "'offenses are separate if each requires proof of an additional fact that the other does not.'" *Id.* at 416 (quoting 2 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 142, at 17 (3d ed. 1999)). However, we have recognized a "distinction between means and elements," and "[i]t is not duplicitous to allege in one count that multiple means have been used to commit a single offense." *United States v. Damrah*, 412 F.3d 618, 622-23 (6th Cir. 2005). In conspiracy charges, "the allegation, in a single count of conspiracy, of an agreement to commit several crimes is not duplicitous, as conspiracy is itself the crime." *United States v. Dale*, 178 F.3d 429, 431 (6th Cir. 1999).

Count 1 of Cromer's indictment is not duplicitous. It charged him with a single crime: conspiracy. The fact that it alleged different objects of the conspiracy—possession with intent to distribute, and distribution—does not render it duplicitous. *Cf. United States v. Woods*, 187 F. App'x 524, 528 (6th Cir. 2006) (holding that indictment charging conspiracy to possess with intent to distribute and to distribute drugs was not duplicitous because "it charge[d] [the defendants] with a single conspiracy"); *Dale*, 178 F.3d at 431-32 (holding that an indictment charging conspiracy to distribute two types of drugs was not duplicitous).

## IV.

Cromer's next argument relates to statements that he made to federal agents at the DEA's office when he attempted to reclaim his Duster. The district court denied his motion to suppress those statements. On appeal, Cromer argues that his statements were tainted fruit because the police unconstitutionally seized his car in an effort "to lure him into coming into the DEA['s] office." He claims that the police misconduct "overbore [his] will," making the statements coerced and involuntary. *Id.*

When reviewing the denial of a motion to suppress, we review the district court's legal conclusions de novo and its factual findings for clear error. *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* We view the evidence produced at the suppression hearing "in the light most likely to support the district court's decision." *Id.* (internal quotation marks omitted).

6

As an initial matter, we agree with the district court's conclusion that Cromer's statements were voluntary. Voluntariness is a threshold for the admission of any confession, *Brown v. Illinois*, 422 U.S. 590, 604 (1975), and is determined by examining "the totality of the circumstances," *United States v. Rutherford*, 555 F.3d 190, 195 (6th Cir. 2009). Here, Cromer initiated the visit to the DEA's office, voluntarily waited to speak to the agents, and freely answered their questions despite being told that he was free to leave. There is no evidence that the officers behaved in an objectively coercive way or that Cromer's will was overborne.

Nor do we find any merit in Cromer's argument that his statements should have been suppressed because they are "fruits" of the unconstitutional seizure of his Duster. Assuming, without deciding, that the district court correctly concluded that the seizure of the Duster was unconstitutional, Cromer's argument nevertheless fails because the connection between the statements and the illegal seizure was sufficiently attenuated to dissipate any taint.

Evidence obtained as a result of a Fourth Amendment violation is generally inadmissible as fruit of the poisonous tree. *See New York v. Harris*, 495 U.S. 14, 18-19 (1990). However, it may be admissible if it "has been come at . . . by means sufficiently distinguishable [from the initial illegal search or seizure] to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (internal quotation marks omitted). Among the factors that we consider to determine whether the taint has dissipated are "the temporal proximity of the illegal conduct to the statements, the presence of any intervening circumstances, and . . . the purpose and flagrancy of the police misconduct." *United States v. Shaw*, 464 F.3d 615, 626-27 (6th Cir. 2006) (internal quotation marks omitted).

Cromer's statements at the DEA's office were sufficiently removed from the seizure of his Duster to dissipate any taint. The Duster was seized on November 17, 2006, and Cromer did not show up at the DEA's office until December 4, 2006, more than two weeks later. Cromer went to the DEA's office freely and of his own volition; no agents coerced him into going there. *Cf. Wilkerson v. United States*, 432 A.2d 730, 732 (D.C. 1981) ("Certainly [the defendant] was not coerced into going to the police station merely because the police held [his] [illegally] seized property."). Further, during the time period between the seizure and Cromer's statements, the charges against Cromer in Georgia were dismissed, such that he was not facing any criminal charges at the time he spoke to the DEA agents. Finally, there was no evidence that the agents seized the Duster in bad faith, or that they did so in order to "lure" Cromer to their office; in fact, the agents had no reason to expect that Cromer would come to their office at all, as they believed that he remained in custody in Georgia.

Accordingly, the district court did not err when it denied Cromer's motion to suppress.

**V.**

Cromer next argues that the district court erred in denying his request for a mitigating role adjustment pursuant to U.S.S.G. § 3B1.2, which provides that a defendant may receive a four-level reduction for being a minimal participant in the offense, or a two-level reduction for being a minor participant. "A minimal participant is one who is 'plainly among the least culpable of those involved in the conduct of a group,' and a minor participant is one who 'is less culpable than most other participants, but whose role could not be described as minimal.'" *United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002) (quoting U.S.S.G. § 3B1.2, cmt. nn.1, 3 (1998)).

8

"When reviewing the district court's application of the Sentencing Guidelines, we review the district court's factual findings for clear error and mixed questions of law and fact *de novo*." *United States v. Bridgewater*, 606 F.3d 258, 260 (6th Cir. 2010) (internal quotation marks omitted). "[W]hether a defendant is entitled to a sentence reduction pursuant to U.S.S.G. § 3B1.2 depends heavily on factual determinations . . . ." *United States v. Groenendal*, 557 F.3d 419, 423 (6th Cir. 2009) (internal quotation marks omitted). "The defendant has the burden of proving by the preponderance of the evidence that he is entitled to the reduction." *United States v. Bailey*, 488 F.3d 363, 369 (6th Cir. 2007).

The district court did not err in denying Cromer's request for a mitigating role adjustment. Cromer willingly drove Watkins to Georgia. He knew that Watkins distributed methamphetamine, and he admitted that he suspected that Watkins was traveling to Georgia to purchase methamphetamine. By driving Watkins (whose eyesight was too poor to drive himself) to Georgia, Cromer "knowingly contributed a vital service to the distribution cartel." *See United States v. Saucedo*, 226 F.3d 782, 788 (6th Cir. 2000) (upholding district court's denial of mitigating role adjustment for defendant who was paid to transport 4 kilograms of cocaine). Further, the evidence regarding Cromer's methamphetamine activities supports the district court's conclusion that he was involved in the drug scheme as a distributor, as well as a purchaser. The district court's finding that Cromer was not a minor or minimal participant is not clearly erroneous.

## VI.

Finally, Cromer argues that his within-Guidelines-range sentence of 169 months is substantively unreasonable. We review sentences for substantive reasonableness under a deferential

abuse-of-discretion standard. *United States v. Alexander*, 543 F.3d 819, 821-22 (6th Cir. 2008). "[A] sentence may be substantively unreasonable when the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent [18 U.S.C.] § 3553(a) factors or gives an unreasonable amount of weight to any pertinent factor." *United States v. Brown*, 557 F.3d 297, 299 (6th Cir. 2009) (internal quotation marks omitted). We presume that a sentence within the Guidelines range is reasonable. *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008) (en banc).

Cromer makes several arguments that his sentence is substantively unreasonable, but none is persuasive. A review of the transcript reveals that the district court thoughtfully considered Cromer's lack of criminal history, age (47 years), and medical condition. And Cromer's complaint about the disparity between his sentence and the shorter sentences received by McFerron and Watkins misses the mark. Cromer fails to acknowledge that those men accepted responsibility and cooperated with the government, things that Cromer declined to do. These differences "result in legitimate co-defendant disparities." *See United States v. Carson*, 560 F.3d 566, 586 (6th Cir. 2009). Moreover, "§ 3553(a)(6) is concerned with national disparities among the many defendants with similar criminal backgrounds convicted of similar criminal conduct," not with disparities among co-defendants. *See United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007).

The district court considered the § 3553(a) factors and arrived at a sentence that it believed was "sufficient, but not greater than necessary, to comply with the purposes of [§] 3553(a)." There is no basis on which to conclude that the district court abused its discretion.

**VII.**

For the foregoing reasons, we **AFFIRM** the judgment of the district court.