COLORADO COURT OF APPEALS                                    **2017COA40M**

Court of Appeals No. 14CA0842
Mesa County District Court No. 13CR443
Honorable Valerie J. Robison, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kelly Gene Davis,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE J. JONES
Dailey and Berger, JJ., concur

Prior Opinion Announced April 6, 2017, <u>WITHDRAWN</u>
Petition for Rehearing <u>DENIED</u>

Announced May 4, 2017

Cynthia H. Coffman, Attorney General, Brock J. Swanson, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Anne Stockham, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1 Defendant, Kelly Gene Davis, appeals the judgment of conviction entered on a jury verdict finding him guilty of conspiracy to distribute a schedule II controlled substance and court verdicts finding him guilty on several habitual criminal charges. His primary contention on appeal is that the People were required to prove, and the jury was required to find, that he committed a particular overt act in furtherance of the alleged conspiracy. We hold, however, that where the People properly charge a single conspiracy, they are required to prove only that the defendant committed an overt act in furtherance of the conspiracy; that is, the jury must agree unanimously that the defendant committed such an overt act, but it need not agree unanimously that the defendant committed a particular overt act. It follows that the district court did not err in failing to require the prosecution to elect a particular overt act on which it was relying to prove the charge or in failing to give the jury a special unanimity instruction. Because we also reject defendant's other contentions of error, we affirm the judgment of conviction.

## I.  Background

¶ 2      In January 2013, the Grand Junction Police Department and a Drug Enforcement Agency Taskforce began investigating the activities of Leonel Gonzalez-Gonzalez.  The investigation entailed wiretapping several of Mr. Gonzalez-Gonzalez's telephones from February 2013 through April 2013.  Police recorded several telephone calls between him and defendant during that time.

¶ 3      As a result of the investigation, the People charged defendant with one count of conspiracy to distribute a schedule II controlled substance (methamphetamine) and several habitual criminal counts.

¶ 4      At trial, Deziree Fisher, a named co-conspirator, testified to participating in and witnessing drug transactions involving defendant.  She said that she provided defendant with drugs, which he would then sell, using the money he made to pay her back.  Ms. Fisher also said that she had been convicted of intent to distribute a controlled substance for her role in drug sales involving defendant and other co-conspirators, and that she was testifying in the hope of receiving a sentence reduction.

¶ 5 Terry Lawrence testified that he was present in January or February 2013 when Mr. Gonzalez-Gonzalez and his associate delivered an ounce or more of methamphetamine to defendant and collected money from him. At the time of the trial, Mr. Lawrence had been charged with racketeering and conspiracy to distribute drugs. He testified that he had not yet been convicted or entered into a plea agreement, and that he was testifying in the hope of receiving a favorable plea offer.

¶ 6 Detective Jason Sawyer testified that in phone calls recorded in February through April 2013, Mr. Gonzalez-Gonzalez agreed to supply defendant with methamphetamine to sell. He also testified that a series of recorded calls from April 1, 2013, showed Mr. Gonzalez-Gonzalez and defendant planning to rent a car to use to pick up drugs. Police officers watched the car rental franchise where the two had arranged to meet and identified one of the people who arrived at the meeting as defendant.

¶ 7 A jury convicted defendant of the conspiracy charge, and the district court, after finding that defendant was a habitual criminal, sentenced him to forty-eight years in the custody of the Department of Corrections.

## II. Discussion

¶ 8     Defendant contends that the district court erred in (1) not (a) requiring the prosecution to elect the overt act on which it was relying to prove the conspiracy charge or (b) giving the jury a special, modified unanimity instruction regarding the particular overt act; (2) not providing a limiting instruction to preclude the jury from considering witnesses' guilty pleas or desires to plead guilty as evidence of his guilt; and (3) imposing an aggravated sentence based on its own findings of prior criminality.  We address and reject each contention in turn.

### A.  Unanimity

#### 1.  Preservation and Standard of Review

¶ 9     The parties agree that this issue was not preserved: defense counsel never requested that the prosecution elect a particular overt act, nor did counsel request a special unanimity instruction.  Because of this, the People argue that defendant waived his contention.  That is so, they say, because defendant didn't make a duplicity challenge under Crim. P. 12(b).  *See Specht v. People*, 156 Colo. 12, 16, 396 P.2d 838, 840 (1964) (a duplicity challenge is waived if not raised before trial); *Russell v. People*, 155 Colo. 422,

4

426, 395 P.2d 16, 18 (1964) (same).[1]  But defendant isn't making a

duplicity challenge on appeal: he isn't arguing that the People

charged more than one offense in a single count.  *See Specht*, 156

Colo. at 16, 396 P.2d at 840; *Russell*, 155 Colo. at 426, 395 P.2d at

18.[2]  Rather, he argues that because the prosecution presented

*evidence* of more than one overt act in furtherance of the

---

[1] Crim. P. 12(b)(2) provides, in relevant part, as follows:

> Defenses and objections based on defects in
> the institution of the prosecution or in the
> indictment or information or complaint, or
> summons and complaint, other than that it
> fails to show jurisdiction in the court or to
> charge an offense, may be raised only by
> motion. . . .  Failure to present any such
> defense or objection constitutes a waiver of it,
> but the court for cause shown may grant relief
> from the waiver.

[2] Count one of the indictment, charging conspiracy to distribute
controlled substances, plainly didn't charge more than one offense.
It alleged in full as follows:

> Between and including February 21, 2013 and
> April 3, 2013, Kelly Gene Davis unlawfully,
> feloniously, and knowingly conspired with
> Leonel Gonzalez-Gonzalez, Desiree Fisher and
> a person or persons to the District Attorney
> unknown, to sell or distribute
> Methamphetamine and/or cocaine, a schedule
> II controlled substance; in violation of section
> 18-18-405(1), (2)(a)(I)(A), C.R.S.

conspiracy, it should have been required to elect or the court should have given the jury a special unanimity instruction. Because he doesn't assert that there is a defect in the charging document, Crim. P. 12(b) doesn't apply and there was no waiver. *See Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 38-45.

¶ 10    Reviewing defendant's contention requires us to determine whether the court erred and, if so, whether the error requires reversal.

¶ 11    Determining whether to require the prosecution to elect a particular act on which it is relying to prove a charge involves an exercise of the district court's discretion, *see Thomas v. People*, 803 P.2d 144, 154 (Colo. 1990), as does determining whether to give a particular jury instruction, *People v. Marks*, 2015 COA 173, ¶ 53. So in reviewing both decisions for error, we must decide whether the district court abused its discretion.

¶ 12    But where the court did not have the opportunity to exercise discretion because the defendant did not move for an election or request the instruction now claimed to have been required, how can we even determine whether the court abused its discretion? We can do so by framing the inquiry in a slightly different way: had the

defendant timely moved for an election or asked for the instruction, would the court have abused its discretion in refusing either of those requests?

¶ 13     If, in this case, we answer that question "yes" with respect to either requiring an election or instruction, because defendant did not timely move for an election or ask for an instruction, we must then determine whether the error was plain.  Under that standard, we will reverse only if the error is obvious and so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.  *People v. Miller*, 113 P.3d 743, 750 (Colo. 2005).

## 2.  Analysis

¶ 14     In Colorado, jury verdicts in criminal cases must be unanimous.  § 16-10-108, C.R.S. 2016; Crim. P. 23(a)(8), 31(a)(3); *People v. Durre*, 690 P.2d 165, 173 (Colo. 1984).  To ensure jury unanimity, when the prosecution offers "evidence of multiple acts, any one of which would constitute the offense charged, the People may be compelled to elect the acts or series of acts on which they rely for a conviction."  *Melina v. People*, 161 P.3d 635, 639 (Colo. 2007) (citing *People v. Estorga*, 200 Colo. 78, 81, 612 P.2d 520, 523

7

(1980)).  But when the People charge a defendant with crimes occurring in a single transaction, they do not have to elect among the acts that constitute the crime, and a special unanimity instruction — that is, one telling the jury that it must agree unanimously as to the act proving each element — need not be given.  *Id.* at 639-42.  The first issue before us, then, is what constitutes a single transaction in the context of a conspiracy charge.

¶ 15    The General Assembly's enactments necessarily inform our inquiry.  Section 18-2-204(1), C.R.S. 2016, provides that "[c]onspiracy is a *continuing course of conduct* which terminates when the crime *or crimes* which are its object are committed." (Emphasis added.)  Another statute also specifies that "[i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are part of a single criminal episode." § 18-2-201(4), C.R.S. 2016.  Read together, the applicable statutes make clear that a defendant can participate in a number of crimes or events to accomplish a single conspiracy.  Put another way, committing a number of crimes, or engaging in a

8

number of noncriminal overt acts, does not necessarily mean there is more than one conspiracy.

¶ 16    Accordingly, we must determine how broadly the prosecution may define a conspiracy without the charge encompassing multiple criminal episodes, consequently requiring either an election or a special unanimity instruction.

¶ 17    We begin with the principle that a single conspiratorial agreement may not be divided into multiple charges. *E.g., United States v. Papa,* 533 F.2d 815, 820 (2d Cir. 1976); *United States v. Young,* 503 F.2d 1072, 1075 (3d Cir. 1974); *United States v. Palermo,* 410 F.2d 468, 470 (7th Cir. 1969). The Supreme Court explained this principle in *Braverman v. United States,* 317 U.S. 49, 53-54 (1942):

> Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.
>
> . . . Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive

> acts which violate a single penal statute and from a single act which violates two statutes.

*See also* Model Penal Code § 5.03(3) (Am. Law Inst. 1985) ("If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship."). As the above-quoted statutes indicate, Colorado has adopted this approach as it pertains to conspiracy charges. *See also People v. Brown*, 185 Colo. 272, 277, 523 P.2d 986, 989 (1974) (noting that Colorado has adopted the above-quoted language from *Braverman*), *overruled on other grounds by Villafranca v. People*, 194 Colo. 472, 573 P.2d 540 (1978); *People v. Bradley*, 169 Colo. 262, 265-66, 455 P.2d 199, 200 (1969) (adopting the above-quoted language from *Braverman*).

¶ 18    The supreme court has indicated that the following factors tend to show a single criminal episode: the acts alleged occurred during the same period, the type of overt act alleged is the same, the unlawful objective of the conspiracy is the same, the modus operandi is the same, and the same evidence would be relevant to the charges. *Pinelli v. Dist. Court*, 197 Colo. 555, 558, 595 P.2d

10

225, 227 (1979). Conversely, factors that may suggest that the People have charged multiple criminal episodes are that the defendant is "charged with conspiring (1) with different parties; (2) in different counties; (3) in different agreements; and [4] with allegations of different overt acts." *Id.*

¶ 19    Federal courts employ a similar multi-factor test to determine whether there was only one agreement, and thus only one conspiracy. *See, e.g., United States v. Rigas*, 605 F.3d 194, 213 (3d Cir. 2010) (en banc) (considering whether the locations of the alleged conspiracies were the same; whether there was a significant degree of temporal overlap between the conspiracies charged; whether there was an overlap of personnel between the conspiracies (including unindicted as well as indicted co-conspirators); the nature of the overt acts charged; and whether the role played by the defendant was similar).

¶ 20    Applying the relevant factors, we conclude that the evidence presented in this case shows one criminal episode, and hence one conspiracy. First, the actions occurred in a relatively short time frame — from February 21, 2013, to April 8, 2013 — and in one county. *Cf. People v. Rivera*, 56 P.3d 1155, 1160 (Colo. App. 2002)

11

(noting the two-year period over which the alleged crimes occurred as one factor showing multiple conspiracies). Second, evidence of defendant's phone conversations with one person (Mr. Gonzalez-Gonzalez) primarily established the conspiracy.[3] Third, all the overt acts on which the jury could have relied — defendant ordering drugs from Mr. Gonzalez-Gonzalez, accepting drugs from Ms. Fisher and Mr. Gonzalez-Gonzalez, and showing up to the car rental franchise at Mr. Gonzalez-Gonzalez's request — were done in furtherance of the same unlawful objective — to distribute one type of drug supplied by one co-conspirator. Though some of these acts were not crimes,[4] they were all a part of a single course of conduct in which Mr. Gonzalez-Gonzalez would regularly supply methamphetamine to defendant to sell. A single crime of conspiracy can be defined this broadly. *See Commonwealth v. Albert*, 745 N.E.2d 990, 997 (Mass. App. Ct. 2001) ("No unanimity

---

[3] Ms. Fisher testified that in January or February 2013, Mr. Gonzalez-Gonzalez supplied drugs to someone who then sold them to her. She sold those drugs to defendant, who then sold them to others. She stopped selling drugs to defendant after about a month and a half, after which Mr. Gonzalez-Gonzalez supplied defendant directly.

[4] *See Braverman v. United States*, 317 U.S. 49, 53 (1942) ("The overt act . . . need not be itself a crime.").

instruction was required because a conspiracy refers to a continuing course of conduct, rather than a succession of clearly detached incidents."). And given the nature and limited scope of defendant's arrangement with Mr. Gonzalez-Gonzalez, it is clear that "[n]o danger exists that some jurors would think [defendant] was guilty of one conspiracy and others would think []he was guilty of a different one." *People v. Russo*, 25 P.3d 641, 647-48 (Cal. 2001).

¶ 21 Though the prosecution alleged numerous overt acts in furtherance of the single conspiracy, that did not require unanimous agreement by the jurors as to the precise overt act defendant committed. This is so because the Colorado Supreme Court has held that "unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged and not with respect to alternative means by which the crime was committed." *People v. Taggart*, 621 P.2d 1375, 1387 n.5 (Colo. 1981).[5] Indeed, it has long been established that a jury need

---

[5] The supreme court's decision in *James v. People*, 727 P.2d 850 (Colo. 1986), can be read as retreating from this position, although it dealt with a somewhat different issue. In that case, the court held that due process requires that when the People present

not unanimously decide "which of several possible sets of underlying brute facts make up a particular element," or "which of several possible means the defendant used to commit an element of the crime." *Richardson v. United States*, 526 U.S. 813, 817 (1999); *see also Schad v. Arizona*, 501 U.S. 624, 631 (1991) (plurality opinion) ("[A]n indictment need not specify which overt act, among several named, was the means by which a crime was committed."); *United States v. Griggs*, 569 F.3d 341, 343 (7th Cir. 2009) ("The law distinguishes between the elements of a crime, as to which the jury must be unanimous, and the means by which the crime is committed.") (jury not required to agree unanimously on particular overt act taken in support of conspiracy).

¶ 22      In *United States v. Gonzalez*, 786 F.3d 714, 718 (9th Cir. 2015), the Ninth Circuit, addressing the overt act element of conspiracy specifically, reasoned as follows:

different theories of how a defendant committed an offense, each such theory must be supported by evidence sufficient to meet the proof beyond a reasonable doubt test. *Id.* at 853-55. In so holding, the court rejected any contrary implication in *People v. Taggart*, 621 P.2d 1375 (Colo. 1981), and other cases. But in *People v. Dunaway*, 88 P.3d 619 (Colo. 2004), the court expressly overruled *James* on this point, relying on *Griffin v. United States*, 502 U.S. 46 (1991).

To be sure, because the instruction for the overt-act element requires the jury to find merely "[a]n overt act" committed by a person who has agreed and intended to commit a particular murder, it is possible that, although the jury unanimously agreed that an overt act was taken with respect to the unanimously agreed-upon murder conspiracy, different jurors may have concluded that different particular overt acts satisfied this element. Even if this occurred, however, [the defendant's] right to a unanimous jury verdict was not violated because, so long as the jurors unanimously agreed that the overt-act element was satisfied, it was not necessary for them to agree on which overt act satisfied this element.

¶ 23    Courts in other jurisdictions have also applied this principle to the overt act requirement of conspiracy charges. The California Supreme Court, for example, has explained that the element of an overt act "consists of *an* overt act, not a *specific* overt act." *Russo*, 25 P.3d at 647; *see also United States v. Kozeny*, 667 F.3d 122, 132 (2d Cir. 2011) ("[W]hich overt act among multiple such acts supports a proof of a conspiracy conviction is a brute fact and not itself an element of the crime."); *Griggs*, 569 F.3d at 343; *State v. Ayala-Leyva*, 848 N.W.2d 546, 553-54 (Minn. Ct. App. 2014) (the jury was not required to unanimously agree on which of twenty overt acts had been committed in furtherance of drug conspiracy;

15

distinguishing between unanimity on the elements of a crime and unanimity as to the facts establishing each element of a crime). Colorado's statute criminalizing conspiracy reflects this approach. § 18-2-201(2) ("No person may be convicted of conspiracy to commit a crime, unless *an* overt act in pursuance of that conspiracy is proved . . . .") (emphasis added).

¶ 24    In sum, courts agree that "a special unanimity instruction is not necessary where an indictment charges a single conspiracy because 'the crux of a conspiracy charge . . . [is] [t]he defendant's voluntary agreement with another or others to commit an offense.'" *United States v. Dvorin*, 817 F.3d 438, 447 (5th Cir. 2016) (alterations in original) (quoting *United States v. Dillman*, 15 F.3d 384, 391 (5th Cir. 1994)); *see also United States v. Cromer*, 436 F. App'x 490, 493 (6th Cir. 2011) ("[T]he jury need only unanimously decide that there was an agreement to violate drug laws . . . .").

¶ 25    *People v. Rivera*, on which defendant relies, is distinguishable. In that case, the prosecution presented evidence of securities transactions "involving at least twenty-five investors, concerning two proposed daycare facilities in different cities, and spanning a two-year period." 56 P.3d at 1160. Further, there was substantial

16

variety in the defendant's involvement in the various acts: "Defendant took part in soliciting some investors, but not others, and as to at least one transaction there was no evidence that she had any direct contact with the investor." *Id.* The division therefore concluded that "[u]nder these circumstances, there is a reasonable likelihood that the jury could have disagreed concerning the act or acts defendant committed." *Id.* In essence, there were multiple conspiracies.

¶ 26    As discussed above, the conspiracy in this case occurred over only a few months in one county. There is also a uniformity of defendant's involvement in the acts that was lacking in *Rivera* — defendant was convicted based on ongoing phone calls and transactions with one person ordering methamphetamine in similar quantities. *See United States v. Sutherland*, 656 F.2d 1181, 1202 (5th Cir. 1981) ("[T]he evidence as to each [of the overt acts] is remarkably similar. Therefore this series of alleged acts comprises one 'conceptual group' and the jury need not have unanimously agreed as to which was proven.").

¶ 27    We therefore conclude that the People charged only one criminal episode. It follows that the district court did not err, much

less plainly err, in failing to require an election or to give the jury a special unanimity instruction.[6]

## B. Limiting Instruction

¶ 28 We also reject defendant's contention that the district court erred by failing to provide a limiting instruction telling the jurors they could not consider Ms. Fisher's guilty plea and Mr. Lawrence's desire to receive a favorable plea offer as evidence of defendant's guilt.

¶ 29 Because defendant did not request a limiting instruction, we review for plain error. *People v. Griffin*, 224 P.3d 292, 298 (Colo. App. 2009).

---

[6] Given the abundance of authority holding that no special instruction is required in comparable circumstances, any error was certainly not "so clear cut and so obvious that a trial judge should have been able to avoid it without benefit of the objection." *People v. Conyac*, 2014 COA 8M, ¶ 54. "Generally, an error is obvious when the action challenged on appeal contravenes (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law." *People v. Dinapoli*, 2015 COA 9, ¶ 30; *accord People v. Pollard*, 2013 COA 31M, ¶ 40; *see also People v. Valdez*, 2014 COA 125, ¶ 27 (where case law on an issue is unsettled, an error is not obvious); *Dougherty v. State*, 21 A.3d 1, 6-7 (Del. 2011) ("Several state and federal courts have concluded that a trial judge does not commit plain error where defense counsel fails to request, and the trial judge does not give sua sponte, a specific unanimity instruction on the overt act requirement of a conspiracy count.").

18

¶ 30    Pursuant to CRE 105, where there is evidence that is admissible for one purpose but not for another, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." And, "[a]s a general rule, defense counsel is charged with the task of deciding whether a limiting instruction is desirable," *Griffin*, 224 P.3d at 298, because "for strategic or tactical reasons, [defense counsel] may consider that such an instruction would be more harmful than beneficial." *People v. Gladney*, 194 Colo. 68, 72, 570 P.2d 231, 234 (1977) (A limiting instruction "might tend to draw special attention to the evidence, thus giving it greater emphasis and jury impact than it would have had if left alone.").

¶ 31    Thus, absent a special statutory duty, a trial court has no duty to give a limiting instruction sua sponte. *See, e.g., Davis v. People*, 2013 CO 57, ¶ 21 ("Unless a limiting instruction is either required by statute or requested by a party, a trial court has no duty to provide one sua sponte."). Defendant does not point to any such statutory duty applicable in this case.

¶ 32    Defendant's reliance on *People v. Brunner*, 797 P.2d 788, 789 (Colo. App. 1990), is misplaced. In that case, the division held that

19

a trial court "should normally instruct the jury that [an accomplice's guilty plea] may be used only for limited purposes and may not be used as substantive evidence of another's guilt." *Id.* But in this case, because defense counsel failed to request such an instruction, "appellate review is limited to determining whether plain error occurred." *People v. Shepherd*, 43 P.3d 693, 696 (Colo. App. 2001). And numerous cases hold that a trial court's failure to give a limiting instruction sua sponte does not constitute plain error. *See, e.g.*, *People v. Montalvo-Lopez*, 215 P.3d 1139, 1145 (Colo. App. 2008) (failure to request a limiting instruction on how the jury should consider an accomplice's guilty plea did not place a duty on the trial court to give one sua sponte). None of the cases defendant cites says otherwise.

¶ 33 Further, there was no obvious error. The testimony was relevant for two reasons. First, it allowed the People to "blunt an expected attack on the credibility of the accomplice as a witness." *Brunner*, 797 P.2d at 789. Second, it "show[ed] acknowledgement by the accomplice of participation in the offense," *id.*, which is particularly relevant in establishing a conspiracy. And defendant

took strategic advantage of the witnesses' plea and potential plea, using the testimony to undermine their credibility.

¶ 34    Given all this, the district court "did not commit the kind of obvious error that may lead to reversal under the plain error doctrine." *Griffin*, 224 P.3d at 299; *see also People v. Pollard*, 2013 COA 31M, ¶ 40 (for an error to be obvious, it must contravene a clear statutory command, a well-settled legal principle, or Colorado case law).

### C. Judicial Determination of Habitual Criminality

¶ 35    Lastly, defendant contends that his rights to a trial by a jury and to due process of law were violated when the judge, instead of a jury, found that he had been convicted of three prior felonies.

¶ 36    As the law stands today, "[o]*ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added); *see also Blakely v. Washington*, 542 U.S. 296, 301 (2004) (applying this rule). The Colorado Supreme Court, in applying this rule, has held that the fact of a prior conviction, called a "*Blakely*-exempt" fact, "is

21

expressly excepted from the jury trial requirement" for aggravated sentencing. *Lopez v. People*, 113 P.3d 713, 723 (Colo. 2005); *see also People v. Huber*, 139 P.3d 628, 630 (Colo. 2006). The court has said that, "[a]lthough there is some doubt about the continued vitality of the prior conviction exception, we conclude that it remains valid after *Blakely*." *Lopez*, 113 P.3d at 723 (footnote omitted); *see also Huber*, 139 P.3d at 631.

¶ 37 Defendant argues that *Lopez* was wrongly decided or that developments after *Lopez* indicate that the "prior conviction exception" is no longer valid. Specifically, he asserts that, "[w]hile it has not been expressly overruled," the case from which the prior conviction exception arose — *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) — has been called into question and will be overturned by the United States Supreme Court when the opportunity arises. *See Apprendi*, 530 U.S. at 488-90; *Misenhelter v. People*, 234 P.3d 657, 660 (Colo. 2010).

¶ 38 But because the Supreme Court has not overruled the prior conviction exception recognized in *Apprendi* and *Blakely*, those authorities continue to control our resolution of defendant's argument. *See People v. Hopkins*, 2013 COA 74, ¶ 25; *see also*

22

*People v. Gladney*, 250 P.3d 762, 768 n.3 (Colo. App. 2010) ("[W]e are bound to follow supreme court precedent."). "We do not have the power to ignore those precedents based on speculation of how the Court might rule in a future case." *Hopkins*, ¶ 25. Therefore, defendant's argument fails.

### III. Conclusion

The judgment is affirmed.

JUDGE DAILEY and JUDGE BERGER concur.

COLORADO COURT OF APPEALS                                    **2017COA40**

Court of Appeals No. 14CA0842
Mesa County District Court No. 13CR443
Honorable Valerie J. Robison, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Kelly Gene Davis,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE J. JONES
Dailey and Berger, JJ., concur

Announced April 6, 2017

Cynthia H. Coffman, Attorney General, Brock J. Swanson, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Anne Stockham, Deputy
State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Kelly Gene Davis, appeals the judgment of conviction entered on a jury verdict finding him guilty of conspiracy to distribute a schedule II controlled substance and court verdicts finding him guilty on several habitual criminal charges. His primary contention on appeal is that the People were required to prove, and the jury was required to find, that he committed a particular overt act in furtherance of the alleged conspiracy. We hold, however, that where the People properly charge a single conspiracy, they are required to prove only that the defendant committed an overt act in furtherance of the conspiracy; that is, the jury must agree unanimously that the defendant committed such an overt act, but it need not agree unanimously that the defendant committed a particular overt act. It follows that the district court did not err in failing to require the prosecution to elect a particular overt act on which it was relying to prove the charge or in failing to give the jury a special unanimity instruction. Because we also reject defendant's other contentions of error, we affirm the judgment of conviction.

## I. Background

¶ 2     In January 2013, the Grand Junction Police Department and a Drug Enforcement Agency Taskforce began investigating the activities of Leonel Gonzalez-Gonzalez. The investigation entailed wiretapping several of Mr. Gonzalez-Gonzalez's telephones from February 2013 through April 2013. Police recorded several telephone calls between him and defendant during that time.

¶ 3     As a result of the investigation, the People charged defendant with one count of conspiracy to distribute a schedule II controlled substance (methamphetamine) and several habitual criminal counts.

¶ 4     At trial, Deziree Fisher, a named co-conspirator, testified to participating in and witnessing drug transactions involving defendant. She said that she provided defendant with drugs, which he would then sell, using the money he made to pay her back. Ms. Fisher also said that she had been convicted of intent to distribute a controlled substance for her role in drug sales involving defendant and other co-conspirators, and that she was testifying in the hope of receiving a sentence reduction.

¶ 5 Terry Lawrence testified that he was present in January or February 2013 when Mr. Gonzalez-Gonzalez and his associate delivered an ounce or more of methamphetamine to defendant and collected money from him. At the time of the trial, Mr. Lawrence had been charged with racketeering and conspiracy to distribute drugs. He testified that he had not yet been convicted or entered into a plea agreement, and that he was testifying in the hope of receiving a favorable plea offer.

¶ 6 Detective Jason Sawyer testified that in phone calls recorded in February through April 2013, Mr. Gonzalez-Gonzalez agreed to supply defendant with methamphetamine to sell. He also testified that a series of recorded calls from April 1, 2013, showed Mr. Gonzalez-Gonzalez and defendant planning to rent a car to use to pick up drugs. Police officers watched the car rental franchise where the two had arranged to meet and identified one of the people who arrived at the meeting as defendant.

¶ 7 A jury convicted defendant of the conspiracy charge, and the district court, after finding that defendant was a habitual criminal, sentenced him to forty-eight years in the custody of the Department of Corrections.

## II.  Discussion

¶ 8    Defendant contends that the district court erred in (1) not (a) requiring the prosecution to elect the overt act on which it was relying to prove the conspiracy charge or (b) giving the jury a special, modified unanimity instruction regarding the particular overt act; (2) not providing a limiting instruction to preclude the jury from considering witnesses' guilty pleas or desires to plead guilty as evidence of his guilt; and (3) imposing an aggravated sentence based on its own findings of prior criminality.  We address and reject each contention in turn.

### A.  Unanimity

#### 1.  Preservation and Standard of Review

¶ 9    The parties agree that this issue was not preserved: defense counsel never requested that the prosecution elect a particular overt act, nor did counsel request a special unanimity instruction.  Because of this, the People argue that defendant waived his contention.  That is so, they say, because defendant didn't make a multiplicity challenge under Crim. P. 12(b).[1]  But the supreme court

_____

[1] The Double Jeopardy Clauses of the United States and Colorado Constitutions protect "against multiple punishments for the same

4

recently rejected this argument in *People v. Zadra*, 2017 CO 18,

¶ 17, and *Reyna-Abarca v. People*, 2017 CO 15, ¶¶ 38-45.

¶ 10    Reviewing defendant's contention requires us to determine

whether the court erred and, if so, whether the error requires

reversal.

¶ 11    Determining whether to require the prosecution to elect a

particular act on which it is relying to prove a charge involves an

exercise of the district court's discretion, *see Thomas v. People*, 803

P.2d 144, 154 (Colo. 1990), as does determining whether to give a

particular jury instruction, *People v. Marks*, 2015 COA 173, ¶ 53.

---

offense."  *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005)
(quoting *Whalen v. United States*, 445 U.S. 684, 688 (1980)).
"Multiplicity" — the charging of multiple counts and the imposition
of multiple punishments for the same offense — is a way of running
afoul of this prohibition.  *See Quintano v. People*, 105 P.3d 585, 589
(Colo. 2005); *Woellhaf*, 105 P.3d at 214.  Crim. P. 12(b)(2) provides,
in relevant part, as follows:

> Defenses and objections based on defects in
> the institution of the prosecution or in the
> indictment or information or complaint, or
> summons and complaint, other than that it
> fails to show jurisdiction in the court or to
> charge an offense, may be raised only by
> motion. . . .  Failure to present any such
> defense or objection constitutes a waiver of it,
> but the court for cause shown may grant relief
> from the waiver.

So in reviewing both decisions for error, we must decide whether the district court abused its discretion.

¶ 12    But where the court did not have the opportunity to exercise discretion because the defendant did not move for an election or request the instruction now claimed to have been required, how can we even determine whether the court abused its discretion?  We can do so by framing the inquiry in a slightly different way: had the defendant timely moved for an election or asked for the instruction, would the court have abused its discretion in refusing either of those requests?

¶ 13    If, in this case, we answer that question "yes" with respect to either requiring an election or instruction, because defendant did not timely move for an election or ask for an instruction, we must then determine whether the error was plain.  Under that standard, we will reverse only if the error is obvious and so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction.  *People v. Miller,* 113 P.3d 743, 750 (Colo. 2005).

## 2. Analysis

¶ 14     In Colorado, jury verdicts in criminal cases must be unanimous.  § 16-10-108, C.R.S. 2016; Crim. P. 23(a)(8), 31(a)(3); *People v. Durre*, 690 P.2d 165, 173 (Colo. 1984).  To ensure jury unanimity, when the prosecution offers "evidence of multiple acts, any one of which would constitute the offense charged, the People may be compelled to elect the acts or series of acts on which they rely for a conviction."  *Melina v. People*, 161 P.3d 635, 639 (Colo. 2007) (citing *Laycock v. People*, 66 Colo. 441, 182 P. 880 (1919)).  But when the People charge a defendant with crimes occurring in a single transaction, they do not have to elect among the acts that constitute the crime, and a special unanimity instruction — that is, one telling the jury that it must agree unanimously as to the act proving each element — need not be given.  *Id.* at 639-42.  The first issue before us, then, is what constitutes a single transaction in the context of a conspiracy charge.

¶ 15     The General Assembly's enactments necessarily inform our inquiry.  Section 18-2-204(1), C.R.S. 2016, provides that "[c]onspiracy is a *continuing course of conduct* which terminates when the crime *or crimes* which are its object are committed."

(Emphasis added.)  Another statute also specifies that "[i]f a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are part of a single criminal episode." § 18-2-201(4), C.R.S. 2016.  Read together, the applicable statutes make clear that a defendant can participate in a number of crimes or events to accomplish a single conspiracy.  Put another way, committing a number of crimes, or engaging in a number of noncriminal overt acts, does not necessarily mean there is more than one conspiracy.

¶ 16    Accordingly, we must determine how broadly the prosecution may define a conspiracy without the charge encompassing multiple criminal episodes, consequently requiring either an election or a special unanimity instruction.

¶ 17    We begin with the principle that a single conspiratorial agreement may not be divided into multiple charges.  *E.g.*, *United States v. Papa*, 533 F.2d 815, 820 (2d Cir. 1976); *United States v. Young*, 503 F.2d 1072, 1075 (3d Cir. 1974); *United States v. Palermo*, 410 F.2d 468, 470 (7th Cir. 1969).  The Supreme Court explained this principle in *Braverman v. United States*, 317 U.S. 49, 53-54 (1942):

Whether the object of a single agreement is to commit one or many crimes, it is in either case that agreement which constitutes the conspiracy which the statute punishes. The one agreement cannot be taken to be several agreements and hence several conspiracies because it envisages the violation of several statutes rather than one.

. . . Since the single continuing agreement, which is the conspiracy here, thus embraces its criminal objects, it differs from successive acts which violate a single penal statute and from a single act which violates two statutes.

*See also* Model Penal Code § 5.03(3) (Am. Law Inst. 1985) ("If a person conspires to commit a number of crimes, he is guilty of only one conspiracy so long as such multiple crimes are the object of the same agreement or continuous conspiratorial relationship."). As the above-quoted statutes indicate, Colorado has adopted this approach as it pertains to conspiracy charges. *See also People v. Brown*, 185 Colo. 272, 277, 523 P.2d 986, 989 (1974) (noting that Colorado has adopted the above-quoted language from *Braverman*), *overruled on other grounds by Villafranca v. People*, 194 Colo. 472, 573 P.2d 540 (1978); *People v. Bradley*, 169 Colo. 262, 265-66, 455 P.2d 199, 200 (1969) (adopting the above-quoted language from *Braverman*).

9

¶ 18   The supreme court has indicated that the following factors tend to show a single criminal episode: the acts alleged occurred during the same period, the type of overt act alleged is the same, the unlawful objective of the conspiracy is the same, the modus operandi is the same, and the same evidence would be relevant to the charges.  *Pinelli v. Dist. Court*, 197 Colo. 555, 558, 595 P.2d 225, 227 (1979).  Conversely, factors that may suggest that the People have charged multiple criminal episodes are that the defendant is "charged with conspiring (1) with different parties; (2) in different counties; (3) in different agreements; and [4] with allegations of different overt acts."  *Id.*

¶ 19   Federal courts employ a similar multi-factor test to determine whether there was only one agreement, and thus only one conspiracy.  *See, e.g.*, *United States v. Rigas*, 605 F.3d 194, 213 (3d Cir. 2010) (en banc) (considering whether the locations of the alleged conspiracies were the same; whether there was a significant degree of temporal overlap between the conspiracies charged; whether there was an overlap of personnel between the conspiracies (including unindicted as well as indicted co-conspirators); the

10

nature of the overt acts charged; and whether the role played by the defendant was similar).

¶ 20    Applying the relevant factors, we conclude that the evidence presented in this case shows one criminal episode, and hence one conspiracy. First, the actions occurred in a relatively short time frame — from February 21, 2013, to April 8, 2013 — and in one county. *Cf. People v. Rivera*, 56 P.3d 1155, 1160 (Colo. App. 2002) (noting the two-year period over which the alleged crimes occurred as one factor showing multiple conspiracies). Second, evidence of defendant's phone conversations with one person (Mr. Gonzalez-Gonzalez) primarily established the conspiracy.[2] Third, all the overt acts on which the jury could have relied — defendant ordering drugs from Mr. Gonzalez-Gonzalez, accepting drugs from Ms. Fisher and Mr. Gonzalez-Gonzalez, and showing up to the car rental franchise at Mr. Gonzalez-Gonzalez's request — were done in furtherance of the same unlawful objective — to distribute one type

---

[2] Ms. Fisher testified that in January or February 2013, Mr. Gonzalez-Gonzalez supplied drugs to someone who then sold them to her. She sold those drugs to defendant, who then sold them to others. She stopped selling drugs to defendant after about a month and a half, after which Mr. Gonzalez-Gonzalez supplied defendant directly.

11

of drug supplied by one co-conspirator.  Though some of these acts were not crimes,[3] they were all a part of a single course of conduct in which Mr. Gonzalez-Gonzalez would regularly supply methamphetamine to defendant to sell.  A single crime of conspiracy can be defined this broadly.  *See Commonwealth v. Albert*, 745 N.E.2d 990, 997 (Mass. App. Ct. 2001) ("No unanimity instruction was required because a conspiracy refers to a continuing course of conduct, rather than a succession of clearly detached incidents.").  And given the nature and limited scope of defendant's arrangement with Mr. Gonzalez-Gonzalez, it is clear that "[n]o danger exists that some jurors would think [defendant] was guilty of one conspiracy and others would think []he was guilty of a different one." *People v. Russo*, 25 P.3d 641, 647-48 (Cal. 2001).

¶ 21  Though the prosecution alleged numerous overt acts in furtherance of the single conspiracy, that did not require unanimous agreement by the jurors as to the precise overt act defendant committed.  This is so because the Colorado Supreme

---

[3] *See Braverman v. United States*, 317 U.S. 49, 53 (1942) ("The overt act . . . need not be itself a crime.").

Court has held that "unanimity is required only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged and not with respect to alternative means by which the crime was committed." *People v. Taggart*, 621 P.2d 1375, 1387 n.5 (Colo. 1981). Indeed, it has long been established that a jury need not unanimously decide "which of several possible sets of underlying brute facts make up a particular element," or "which of several possible means the defendant used to commit an element of the crime." *Richardson v. United States*, 526 U.S. 813, 817 (1999); *see also Schad v. Arizona*, 501 U.S. 624, 631 (1991) (plurality opinion) ("[A]n indictment need not specify which overt act, among several named, was the means by which a crime was committed."); *United States v. Griggs*, 569 F.3d 341, 343 (7th Cir. 2009) ("The law distinguishes between the elements of a crime, as to which the jury must be unanimous, and the means by which the crime is committed.") (jury not required to agree unanimously on particular overt act taken in support of conspiracy).

¶ 22     In *United States v. Gonzalez*, 786 F.3d 714, 718 (9th Cir. 2015), the Ninth Circuit, addressing the overt act element of conspiracy specifically, reasoned as follows:

13

To be sure, because the instruction for the overt-act element requires the jury to find merely "[a]n overt act" committed by a person who has agreed and intended to commit a particular murder, it is possible that, although the jury unanimously agreed that an overt act was taken with respect to the unanimously agreed-upon murder conspiracy, different jurors may have concluded that different particular overt acts satisfied this element. Even if this occurred, however, [the defendant's] right to a unanimous jury verdict was not violated because, so long as the jurors unanimously agreed that the overt-act element was satisfied, it was not necessary for them to agree on which overt act satisfied this element.

¶ 23    Courts in other jurisdictions have also applied this principle to the overt act requirement of conspiracy charges. The California Supreme Court, for example, has explained that the element of an overt act "consists of *an* overt act, not a *specific* overt act." *Russo,* 25 P.3d at 647; *see also United States v. Kozeny,* 667 F.3d 122, 132 (2d Cir. 2011) ("[W]hich overt act among multiple such acts supports a proof of a conspiracy conviction is a brute fact and not itself an element of the crime."); *Griggs,* 569 F.3d at 343; *State v. Ayala-Leyva,* 848 N.W.2d 546, 553-54 (Minn. Ct. App. 2014) (the jury was not required to unanimously agree on which of twenty overt acts had been committed in furtherance of drug conspiracy;

14

distinguishing between unanimity on the elements of a crime and unanimity as to the facts establishing each element of a crime). Colorado's statute criminalizing conspiracy reflects this approach. § 18-2-201(2) ("No person may be convicted of conspiracy to commit a crime, unless *an* overt act in pursuance of that conspiracy is proved . . . .") (emphasis added).

¶ 24   In sum, courts agree that "a special unanimity instruction is not necessary where an indictment charges a single conspiracy because 'the crux of a conspiracy charge . . . [is] [t]he defendant's voluntary agreement with another or others to commit an offense.'" *United States v. Dvorin*, 817 F.3d 438, 447 (5th Cir. 2016) (alterations in original) (quoting *United States v. Dillman*, 15 F.3d 384, 391 (5th Cir. 1994)); *see also United States v. Cromer*, 436 F. App'x 490, 493 (6th Cir. 2011) ("[T]he jury need only unanimously decide that there was an agreement to violate drug laws . . . .").

¶ 25   *People v. Rivera*, on which defendant relies, is distinguishable. In that case, the prosecution presented evidence of securities transactions "involving at least twenty-five investors, concerning two proposed daycare facilities in different cities, and spanning a two-year period." 56 P.3d at 1160. Further, there was substantial

variety in the defendant's involvement in the various acts: "Defendant took part in soliciting some investors, but not others, and as to at least one transaction there was no evidence that she had any direct contact with the investor." *Id.* The division therefore concluded that "[u]nder these circumstances, there is a reasonable likelihood that the jury could have disagreed concerning the act or acts defendant committed." *Id.* In essence, there were multiple conspiracies.

¶ 26 As discussed above, the conspiracy in this case occurred over only a few months in one county. There is also a uniformity of defendant's involvement in the acts that was lacking in *Rivera* — defendant was convicted based on ongoing phone calls and transactions with one person ordering methamphetamine in similar quantities. *See United States v. Sutherland*, 656 F.2d 1181, 1202 (5th Cir. 1981) ("[T]he evidence as to each [of the overt acts] is remarkably similar. Therefore this series of alleged acts comprises one 'conceptual group' and the jury need not have unanimously agreed as to which was proven.").

¶ 27 We therefore conclude that the People charged only one criminal episode. It follows that the district court did not err, much

less plainly err, in failing to require an election or to give the jury a special unanimity instruction.[4]

## B. Limiting Instruction

¶ 28    We also reject defendant's contention that the district court erred by failing to provide a limiting instruction telling the jurors they could not consider Ms. Fisher's guilty plea and Mr. Lawrence's desire to receive a favorable plea offer as evidence of defendant's guilt.

¶ 29    Because defendant did not request a limiting instruction, we review for plain error. *People v. Griffin*, 224 P.3d 292, 298 (Colo. App. 2009).

---

[4] Given the abundance of authority holding that no special instruction is required in comparable circumstances, any error was certainly not "so clear cut and so obvious that a trial judge should have been able to avoid it without benefit of the objection." *People v. Conyac*, 2014 COA 8M, ¶ 54. "Generally, an error is obvious when the action challenged on appeal contravenes (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law." *People v. Dinapoli*, 2015 COA 9, ¶ 30; *accord People v. Pollard*, 2013 COA 31M, ¶ 40; *see also People v. Valdez*, 2014 COA 125, ¶ 27 (where case law on an issue is unsettled, an error is not obvious); *Dougherty v. State*, 21 A.3d 1, 6-7 (Del. 2011) ("Several state and federal courts have concluded that a trial judge does not commit plain error where defense counsel fails to request, and the trial judge does not give sua sponte, a specific unanimity instruction on the overt act requirement of a conspiracy count.").

17

¶ 30    Pursuant to CRE 105, where there is evidence that is admissible for one purpose but not for another, "the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." And, "[a]s a general rule, defense counsel is charged with the task of deciding whether a limiting instruction is desirable," *Griffin*, 224 P.3d at 298, because "for strategic or tactical reasons, [defense counsel] may consider that such an instruction would be more harmful than beneficial." *People v. Gladney*, 194 Colo. 68, 72, 570 P.2d 231, 234 (1977) (A limiting instruction "might tend to draw special attention to the evidence, thus giving it greater emphasis and jury impact than it would have had if left alone.").

¶ 31    Thus, absent a special statutory duty, a trial court has no duty to give a limiting instruction sua sponte. *See, e.g., Davis v. People*, 2013 CO 57, ¶ 21 ("Unless a limiting instruction is either required by statute or requested by a party, a trial court has no duty to provide one sua sponte."). Defendant does not point to any such statutory duty applicable in this case.

¶ 32    Defendant's reliance on *People v. Brunner*, 797 P.2d 788, 789 (Colo. App. 1990), is misplaced. In that case, the division held that

18

a trial court "should normally instruct the jury that [an accomplice's guilty plea] may be used only for limited purposes and may not be used as substantive evidence of another's guilt." *Id.* But in this case, because defense counsel failed to request such an instruction, "appellate review is limited to determining whether plain error occurred." *People v. Shepherd*, 43 P.3d 693, 696 (Colo. App. 2001). And numerous cases hold that a trial court's failure to give a limiting instruction sua sponte does not constitute plain error. *See, e.g.*, *People v. Montalvo-Lopez*, 215 P.3d 1139, 1145 (Colo. App. 2008) (failure to request a limiting instruction on how the jury should consider an accomplice's guilty plea did not place a duty on the trial court to give one sua sponte). None of the cases defendant cites says otherwise.

¶ 33    Further, there was no obvious error. The testimony was relevant for two reasons. First, it allowed the People to "blunt an expected attack on the credibility of the accomplice as a witness." *Brunner*, 797 P.2d at 789. Second, it "show[ed] acknowledgement by the accomplice of participation in the offense," *id.*, which is particularly relevant in establishing a conspiracy. And defendant

took strategic advantage of the witnesses' plea and potential plea, using the testimony to undermine their credibility.

¶ 34    Given all this, the district court "did not commit the kind of obvious error that may lead to reversal under the plain error doctrine." *Griffin*, 224 P.3d at 299; *see also People v. Pollard*, 2013 COA 31M, ¶ 40 (for an error to be obvious, it must contravene a clear statutory command, a well-settled legal principle, or Colorado case law).

## C.  Judicial Determination of Habitual Criminality

¶ 35    Lastly, defendant contends that his rights to a trial by a jury and to due process of law were violated when the judge, instead of a jury, found that he had been convicted of three prior felonies.

¶ 36    As the law stands today, "[o]*ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added); *see also Blakely v. Washington*, 542 U.S. 296, 301 (2004) (applying this rule).  The Colorado Supreme Court, in applying this rule, has held that the fact of a prior conviction, called a "*Blakely*-exempt" fact, "is

20

expressly excepted from the jury trial requirement" for aggravated sentencing. *Lopez v. People*, 113 P.3d 713, 723 (Colo. 2005); *see also People v. Huber*, 139 P.3d 628, 630 (Colo. 2006). The court has said that, "[a]lthough there is some doubt about the continued vitality of the prior conviction exception, we conclude that it remains valid after *Blakely*." *Lopez*, 113 P.3d at 723 (footnote omitted); *see also Huber*, 139 P.3d at 631.

¶ 37     Defendant argues that *Lopez* was wrongly decided or that developments after *Lopez* indicate that the "prior conviction exception" is no longer valid. Specifically, he asserts that, "[w]hile it has not been expressly overruled," the case from which the prior conviction exception arose — *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) — has been called into question and will be overturned by the United States Supreme Court when the opportunity arises. *See Apprendi*, 530 U.S. at 488-90; *Misenhelter v. People*, 234 P.3d 657, 660 (Colo. 2010).

¶ 38     But because the Supreme Court has not overruled the prior conviction exception recognized in *Apprendi* and *Blakely*, those authorities continue to control our resolution of defendant's argument. *See People v. Hopkins*, 2013 COA 74, ¶ 25; *see also*

21

*People v. Gladney*, 250 P.3d 762, 768 n.3 (Colo. App. 2010) ("[W]e are bound to follow supreme court precedent."). "We do not have the power to ignore those precedents based on speculation of how the Court might rule in a future case." *Hopkins*, ¶ 25. Therefore, defendant's argument fails.

## III. Conclusion

¶ 39 The judgment is affirmed.

JUDGE DAILEY and JUDGE BERGER concur.