The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
December 1, 2022

## 2022COA136

### No. 19CA0172, *Peo v Ryan* — Crimes — Domestic Violence — Habitual Domestic Violence Offenders; Criminal Law — Sentencing —  Penalty Enhancers — Prior Convictions

As a matter of first impression, a division of the court of appeals interprets the language of the habitual domestic violence offender (HDVO) statute, § 18-6-801(7), C.R.S. 2022, to require that a jury determine whether a defendant has been previously convicted of a domestic violence offense, unless the defendant previously admitted the domestic violence finding as part of a plea agreement, or a jury previously made the domestic violence finding. Because the trial court erroneously made the domestic violence finding for two of the defendant's four prior convictions, we reverse the judgment and remand the case for entry of a misdemeanor conviction and sentence or for retrial under the HDVO statute, at the prosecution's discretion. We reject the defendant's unanimity

contention, but we agree that he is entitled to a restitution hearing on remand.

Court of Appeals No. 19CA0172
City and County of Denver District Court No. 18CR3097
Honorable A. Bruce Jones, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Sheldon M. Ryan,

Defendant-Appellant.

JUDGMENT AND ORDER REVERSED
AND CASE REMANDED WITH DIRECTIONS

Division VI
Opinion by JUDGE FREYRE
Lipinsky and Casebolt*, JJ., concur

Announced December 1, 2022

Philip J. Weiser, Attorney General, Brock J. Swanson, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Elyse Maranjian, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2022.

¶ 1    Sheldon M. Ryan, the defendant, appeals his misdemeanor convictions for third degree assault and criminal mischief and their enhancement to felonies under the habitual domestic violence offender (HDVO) statute, § 18-6-801(7), C.R.S. 2022.  He contends that the trial court erroneously (1) instructed the jury on unanimity; (2) denied his right to have a jury decide the HDVO counts; and (3) denied his request for a restitution hearing.  As a matter of first impression, we conclude that the HDVO statute requires the merits fact-finder (here the jury) to determine whether a defendant has been previously convicted of a domestic violence offense, unless the defendant previously admitted the domestic violence finding as part of a plea, or a jury previously made the domestic violence finding.  Because the trial court denied Ryan's request for a jury determination of his HDVO status, we reverse his conviction and remand the case for resentencing on the misdemeanor conviction or retrial under the HDVO statute, at the prosecution's discretion.  We reject Ryan's unanimity argument, but we agree that he is entitled to a restitution hearing on remand.

¶ 2    The State charged Ryan with misdemeanor third degree assault, obstruction of telephone services, and criminal mischief.  It

1

also charged him with three corresponding HDVO sentence enhancers which, if proved, would increase each misdemeanor conviction to a class 5 felony.

¶ 3     The jury found Ryan guilty of third degree assault as an act of domestic violence and criminal mischief as an act of domestic violence, and the trial court subsequently adjudicated him an HDVO and enhanced his sentence accordingly.[1]  Ryan appeals his third degree assault conviction and criminal mischief convictions and HDVO adjudication.  He also appeals the court's order imposing restitution.

¶ 4     We first consider and reject Ryan's unanimity challenge to his third degree assault conviction.  Second, concerning his HDVO enhancements, we agree with his contention that the language of the HDVO statute required a jury to determine whether his prior convictions included an act of domestic violence when the prior convictions did not involve a jury finding or admission by him.  In light of these conclusions, we need not consider Ryan's remaining assertions that, consistent with *Linnebur v. People*, 2020 CO 79M,

---

[1] The jury acquitted him of obstruction of telephone services.

2

the prior convictions constitute an element of the offense that must be tried to a jury, or that, under *Blakely v. Washington*, 542 U.S. 296 (2004), the "fact" that increased his punishment (the prior convictions) had to be found by a jury, not a judge. *See People v. Curtis*, 2014 COA 100, ¶ 12 ("[T]he cardinal principle of judicial restraint — if it is not necessary to decide more, it is necessary not to decide more." (quoting *PDK Lab'ys Inc. v. U.S. Drug Enf't Admin.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment))). Thus, we conclude that the trial court erred when, following the guilt phase of the trial, it determined that the HDVO counts had been proven. We therefore reverse the HDVO adjudication and felony convictions and remand the case for further proceedings.

¶ 5　　Finally, because Ryan was entitled to a hearing on the issue of restitution, we reverse the restitution order and remand the case for a hearing.

## I.　Background

¶ 6　　According to the trial evidence, on March 9, 2018, Ryan and the victim argued and ended their domestic relationship. The victim testified that Ryan struck her during their argument.

¶ 7    The next day, Ryan returned to the victim's home in the afternoon to collect his things.  He entered the home and confronted the victim in her bedroom.  While the victim was on the phone with Ryan's mother, Ryan grabbed and broke the victim's phone and slapped her.  Ryan's mother called 911, and an officer responded to the residence.  The officer left after the victim assured him that everything was fine.

¶ 8    Ryan then began threatening the victim, and she ran to a neighbor's house and used the neighbor's phone to call 911.  Ryan followed the victim to the neighbor's house.  The victim agreed to return with him to her house so he could collect a necklace and leave.

¶ 9    Ryan kicked and pushed the victim while walking back to the house.  He then pushed the victim inside the house and continued kicking her.  Ryan also slapped the victim in the head, which knocked off her glasses and broke them, and then pulled out some of the victim's hair.  As Ryan collected his remaining belongings, the victim ran from the house and encountered the returning officer.

## II.  Unanimity

¶ 10    Ryan contends that, because the prosecution presented evidence of multiple acts that could have supported his third degree assault conviction, the trial court erred by failing to require the prosecution to elect the act supporting that count or by failing to give the jury a modified unanimity instruction informing the jury that it had to agree on the same act to convict him of third degree assault.  We perceive no reversible error.

### A.    Standard of Review and Applicable Law

¶ 11    A jury verdict must be unanimous.  § 16-10-108, C.R.S. 2022.  "Unanimity means only that each juror agrees that each element of the crime charged has been proved to that juror's satisfaction beyond a reasonable doubt."  *People v. Linares-Guzman*, 195 P.3d 1130, 1134 (Colo. App. 2008).

¶ 12    "When evidence of many acts is presented, any one of which could constitute the offense charged, and there is a reasonable likelihood that jurors may disagree on the act the defendant committed, the trial court must take one of two actions to ensure jury unanimity."  *People v. Rivera*, 56 P.3d 1155, 1159-60 (Colo. App. 2002).

5

¶ 13    First, the court may require the prosecution to elect the acts or series of acts on which it relies for a conviction. *Melina v. People*, 161 P.3d 635, 639 (Colo. 2007). Or, if "the prosecution does not elect to stand upon a specific incident, jurors should be instructed that they must unanimously agree as to a specific act or agree that the defendant committed all the acts alleged." *People v. Manier*, 197 P.3d 254, 258 (Colo. App. 2008). "The requirement of an election or a modified unanimity instruction assures that a conviction does not result from some members of the jury finding the defendant guilty of one act, while others convict based on a different act." *Rivera*, 56 P.3d at 1160.

¶ 14    But "when a defendant is charged with crimes occurring in a single transaction, the prosecutor need not elect among the acts, and the trial court need not give a modified unanimity instruction." *People v. Greer*, 262 P.3d 920, 925 (Colo. App. 2011).

¶ 15    We review de novo whether a court erred by failing to require an election or give a unanimity instruction. *People v. Wagner*, 2018 COA 68, ¶ 38.

¶ 16    The parties agree that Ryan did not ask for an election or a modified unanimity instruction, so we review for plain error. *See*

6

*Manier*, 197 P.3d at 258. "An error is plain if it is obvious and substantial and so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Wester-Gravelle*, 2020 CO 64, ¶ 28 (quoting *People v. Rediger*, 2018 CO 32, ¶ 48). "Reversal under a plain error standard requires a defendant to demonstrate not only that the absence of an instruction affected a substantial right, but also that the record reveals a reasonable possibility that the error contributed to the conviction." *People v. Devine*, 74 P.3d 440, 443 (Colo. App. 2003).

## B.    Analysis

¶ 17    Ryan identifies four separate acts that could have supported the third degree assault conviction: (1) the March 9 strike on the victim; (2) the March 10 slap in the victim's bedroom before Ryan's mother called 911; (3) the March 10 kicking and pushing of the victim while Ryan and the victim returned to the victim's home after the victim's 911 call; and (4) the March 10 kicking, slapping, and pulling of the victim's hair after they entered the victim's home. He asserts that, because "[t]hese acts were not a single transaction of criminal conduct," the trial court reversibly erred by not requiring

the prosecution to elect which act would support the assault count or by not instructing the jury that they must agree on which act constituted the assault.

¶ 18    We are not persuaded because our supreme court recently reiterated that "a jury need not unanimously decide 'which of several possible sets of underlying brute facts make up a particular element' or 'which of several possible means the defendant used to commit an element of the crime.'" *Wester-Gravelle*, ¶ 30 (quoting *People v. Archuleta*, 2020 CO 63M, ¶ 20); *see also Manier*, 197 P.3d at 258-59.

¶ 19    Furthermore, the trial record shows that the prosecutor consistently relied on Ryan's actions after the 911 call from the neighbor's house on March 10 as the basis for his third degree assault conviction. During her opening statement, the prosecutor described the assault as follows:

> [Ryan] tells [the victim] . . . that he still wants to get back a necklace, so they leave the neighbor's house, and they go back to her house. *This is when the physical assault takes place.* You will see surveillance from a neighbor's home, and [the victim] will describe to you that as she's walking back into her house to try to comply with his request for property, that he kicks her, he forces her to go

8

> inside, and then on the stairs, assaults her,
> knocking her glasses off . . . .

(Emphasis added.) Ryan's opening statement also addressed this conduct.

¶ 20    Consistent with her opening statement, the prosecutor's witness examinations focused on Ryan's conduct after the victim's 911 call at the neighbor's house. The victim testified about the pain she suffered when "Mr. Ryan[] was kicking and pushing [her] as [they] were making [their] way back into the house," and the police officer testified that the victim reported suffering an ankle injury "[w]hen Mr. Ryan had kicked her prior to entering the house." *See* § 18-3-204(1)(a), C.R.S. 2022 (a person commits third degree assault if the person knowingly or recklessly causes "bodily injury" to another person); § 18-1-901(3)(c), C.R.S. 2022 ("'Bodily injury' means physical pain, illness, or any impairment of physical or mental condition.").

¶ 21    The prosecutor also introduced the following evidence to prove Ryan's conduct after leaving the neighbor's house: (1) a recording of the victim's 911 call, during which the neighbor said "he's hitting her" while observing Ryan and the victim walk back to the victim's

house; (2) the neighbor's home surveillance video showing Ryan kicking the victim while returning to the victim's house after the 911 call; and (3) photographs of the victim's broken eyeglasses and pulled-out hair.

¶ 22   During closing argument, the prosecutor relied on the above evidence to argue that she had proven third degree assault. She also argued that, at the time the victim called 911, "she realized she was in danger, and she was scared, and she was right because that's exactly when it turned physical."

¶ 23   Finally, we note that the trial court provided the jury with the model unanimity instruction, which stated that "[t]he verdict for each charge must represent the considered judgment of each juror, and it must be unanimous" and that "[i]n other words, all of [the jurors] must agree to all parts of it." *See Wester-Gravelle*, ¶ 38; *see also Carter*, ¶ 59.

¶ 24   Although Ryan asserts that his conduct while outside after the victim's 911 call is separate from his conduct inside the victim's house, he does not explain why those multiple acts are not part of a single criminal transaction. *See People v. Collins*, 730 P.2d 293, 296 (Colo. 1986) (an election was not required where the

defendant's multiple physical acts against the victim constituted one transaction); *People v. Vigil*, 2015 COA 88M, ¶ 42 (same), *aff'd*, 2019 CO 105; *Greer*, 262 P.3d at 925; *see also Archuleta*, ¶ 31; *cf. People v. Torres*, 224 P.3d 268, 278 (Colo. App. 2009) (A unanimity instruction was not required because "[the defendant's] conduct and acts supporting the offense occurred during a single criminal episode — the twenty-seven-mile police chase."). And while Ryan asserts that some of his conduct was separated by intervening events, he does not identify any intervening events that occurred between his conduct inside and his conduct outside the victim's house after her 911 call. Accordingly, we conclude that any error in not requiring an election or giving a modified unanimity instruction was not obvious. *See Wester-Gravelle*, ¶¶ 36-38, 42.

¶ 25    Finally, based on our review of the record, we are not convinced that the omission of an election or a modified unanimity instruction so undermined the fundamental fairness of the trial as to cast serious doubt on the reliability of the judgment of conviction. *See Devine*, 74 P.3d at 443; *Rivera*, 56 P.3d at 1159; *cf. Roelker v. People*, 804 P.2d 1336, 1340 (Colo. 1991) (The trial court's failure to require the prosecution to make an election or to

11

provide a unanimity instruction was harmless "because the evidence of sexual abuse was restricted to a narrow time frame and was limited to events surrounding a single transaction."). As noted above, the prosecutor consistently argued Ryan's conduct following the 911 call from the neighbor's house as the basis for the third degree assault charge. Therefore, we also affirm his conviction on this basis.

### III. HDVO Adjudication

¶ 26 Ryan next contends that the trial court reversibly erred when it found that his prior convictions included an act of domestic violence because (1) the HDVO statute required that this finding be made by the jury that determined his guilt on the charged offenses; (2) the alleged existence of three prior convictions that included an act of domestic violence was an element of the charged offenses and should have been submitted to the jury; and (3) the trial court's finding that his prior convictions included an act of domestic violence violated the requirements of *Blakely*. Ryan also asserts that, assuming the trial court properly made the domestic violence findings related to his prior convictions, the evidence was

insufficient to prove beyond a reasonable doubt that he had three prior convictions that included an act of domestic violence.

¶ 27 The People address only Ryan's statutory argument and concede that the HDVO statute required the jury to determine whether some of Ryan's prior convictions included an act of domestic violence. The People claim, however, that the error does not require reversal.

¶ 28 We agree with the parties that, under the circumstances, the HDVO statute required the jury to determine whether Ryan's prior convictions included an act of domestic violence and that the trial court erred by making that domestic violence finding for some of the prior convictions. We also conclude that the error requires reversal of Ryan's felony convictions and HDVO adjudication. Consequently, we need not address Ryan's remaining claims.

A. Standard of Review and Applicable Law

¶ 29 Statutory interpretation is a question of law that we review de novo. *People v. Gallegos*, 2013 CO 45, ¶ 7.

¶ 30 When interpreting a statute, our primary purpose is to ascertain and give effect to the General Assembly's intent. *Cowen v. People*, 2018 CO 96, ¶ 12. "To do so, we look first to the language

13

of the statute, giving its words and phrases their plain and ordinary meanings." *McCoy v. People*, 2019 CO 44, ¶ 37. "We read statutory words and phrases in context, and we construe them according to the rules of grammar and common usage." *Id.*

¶ 31     Our interpretation of a statute "must also endeavor to effectuate the purpose of the legislative scheme." *Id.* at ¶ 38. We must "read that scheme as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we must avoid constructions that would render any words or phrases superfluous or lead to illogical or absurd results." *Id.*

¶ 32     "[I]f the language in a statute is clear and unambiguous, we give effect to its plain meaning and look no further." *Cowen*, ¶ 12. "Only if the statutory language is susceptible to more than one reasonable interpretation and is therefore ambiguous may we resort to extrinsic aids of construction to address the ambiguity and decide which reasonable interpretation to accept based on the legislature's intent." *Id.*

### B.     Interpretation of the HDVO Statute

¶ 33     Under the HDVO statute, a misdemeanor conviction that includes an act of domestic violence is enhanced to "a class 5 felony

14

if the defendant at the time of sentencing has been previously

convicted of three or more prior offenses that included an act of

domestic violence and that were separately brought and tried and

arising out of separate criminal episodes." § 18-6-801(7)(a).

¶ 34     The HDVO statute provides the following procedure for

litigating and resolving an allegation that a defendant should be

adjudged an HDVO:

> (c) Trials in cases alleging that the defendant is an habitual domestic violence offender pursuant to this subsection (7) must be conducted in accordance with the rules of criminal procedure for felonies. *The trier of fact shall determine whether an offense charged includes an act of domestic violence.*
>
> (d) Following a conviction for an offense which underlying factual basis includes an act of domestic violence:
>
> (I) If any prior conviction included a determination by a jury or was admitted by the defendant that the offense included an act of domestic violence, the court shall proceed to sentencing without further findings as to that prior conviction by the jury or by the court, if no jury trial is had;
>
> (II) For any prior conviction in which the factual basis was found by the court to include an act of domestic violence, but did not include a finding of domestic violence by a jury or that was not admitted by the defendant, the

15

trial court shall proceed to a sentencing stage of the proceedings. *The prosecution shall present evidence to the trier of fact that the prior conviction included an act of domestic violence.* The prosecution has the burden of proof beyond a reasonable doubt.

(III) At the sentencing stage, the following applies:

(A) A finding of domestic violence made by a court at the time of the prior conviction constitutes prima facie evidence that the crime involved domestic violence;

(B) Evidence of the prior conviction is admissible through the use of certified documents under seal, or the court may take judicial notice of a prior conviction;

(C) Evidence admitted in the guilt stage of the trial, including testimony of the defendant and other acts admitted pursuant to section 18-6-801.5, [C.R.S. 2022,] may be considered by the finder of fact.

§ 18-6-801(7)(c)-(d) (emphasis added).

¶ 35    Reading the statute as a whole, we conclude that the General Assembly intended that when a defendant is alleged to fall within the definition of an HDVO, at the guilt phase of the misdemeanor trial, the trier of fact must determine whether the triggering charge included an act of domestic violence, *see* § 18-6-801(7)(c), and then, if necessary, further determines whether a prior conviction included

16

an act of domestic violence, *see* § 18-6-801(7)(d)(II). *See also* COLJI-Crim. 6-8:01.INT, 6-8:01.5.INT (2021).

¶ 36    Section 18-6-801(7)(d)(I) provides that, if a defendant's prior conviction included an act of domestic violence based on a jury finding or the defendant's admission, then no "further findings [are required] as to that prior conviction *by the jury or by the court, if no jury trial is had.*" (Emphasis added.) In such a case, the trial court "shall proceed to sentencing." *Id.*

¶ 37    However, when a defendant's prior conviction does not include a jury finding of or a defendant's admission to an act of domestic violence, then section 18-6-801(7)(d)(II) requires the trial court to proceed to the sentencing phase of the proceedings where the prosecution must then prove to the trier of fact, beyond a reasonable doubt, that the prior conviction included an act of domestic violence.

¶ 38    When read together, we conclude the General Assembly intended that a domestic violence finding associated with a defendant's prior conviction must be (1) previously determined by a jury; (2) previously admitted by the defendant; or (3) proved to the trier of fact at sentencing in the current proceeding. *See People v.*

17

*Weeks*, 2021 CO 75, ¶ 26 ("We must take equal care to construe a statute 'as a whole,' with an eye toward giving consistent, harmonious, and sensible effect to all its parts." (quoting *Whitaker v. People*, 48 P.3d 555, 558 (Colo. 2002))); *People v. Sheth*, 2013 COA 33, ¶ 6 ("We read the statute as a whole and construe each provision consistently and harmoniously with the overall statutory design.").

¶ 39    Additionally, we note that the General Assembly used the phrase, "*the* trier of fact" when describing to whom the prosecution would need to prove that the prior conviction included an act of domestic violence.  § 18-6-801(7)(d)(II) (emphasis added); *see Nielsen v. Preap*, 586 U.S. ___, ___, 139 S. Ct. 954, 965 (2019) ("[G]rammar and usage establish that 'the' is 'a function word . . . indicat[ing] that a following noun or noun equivalent is definite *or has been previously specified by context*.'") (emphasis added) (quoting Merriam-Webster's Collegiate Dictionary 1294 (11th ed. 2005)); *Brooks v. Zabka*, 168 Colo. 265, 269, 450 P.2d 653, 655 (1969) ("It is a rule of law well established that the definite article 'the' particularizes the subject which it precedes.  It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or

18

'an.'"). And we must give full effect to the words chosen by the General Assembly and presume that it meant what it clearly said. *State v. Nieto*, 993 P.2d 493, 500 (Colo. 2000).

¶ 40 Accordingly, we hold that, when a defendant has a jury trial on a triggering misdemeanor charge and the prosecution seeks to adjudicate the defendant an HDVO based on prior convictions in which a trial court made the domestic violence finding, the HDVO statute requires the jury to also determine whether those prior convictions included an act of domestic violence unless the exceptions set forth in section 18-6-801(7)(d)(I) apply.

## C. Application

¶ 41 Ryan contends, the People concede, and we agree that the trial court erred by finding that Ryan had three or more prior convictions that included an act of domestic violence because, under section 18-6-801(7)(d)(II), the jury should have made that determination on at least two of Ryan's four prior convictions. The other two convictions were, arguably, exempt from additional jury findings under section 18-6-801(7)(d)(I).

¶ 42 We turn next to whether this error was preserved and the appropriate remedy.

19

¶ 43    Ryan claims that his pretrial motion requesting a bifurcated proceeding and a jury trial on the HDVO counts, combined with the court's grant of his requests, sufficiently preserved this issue for our review.  He argues that his felony convictions should be reversed and the case should be remanded for entry of misdemeanor convictions.

¶ 44    The People respond that, despite Ryan's pretrial motion and the court's grant of it, Ryan failed to preserve this issue for our review when he did not lodge another objection at the sentencing hearing to the court's contrary decision to conduct a bench trial on the HDVO counts.  The People ask us to review this issue for plain error and argue that the court's failure to submit the HDVO counts to the jury did not rise to the level of plain error because Ryan was not prejudiced by the omission.

¶ 45    We need not resolve this dispute because we conclude that reversal is required even under the plain error standard.  *See People v. Kadell*, 2017 COA 124, ¶¶ 6, 25.

¶ 46    Plain error is error that is obvious and substantial.  *Hagos v. People*, 2012 CO 63, ¶ 14.  While the obviousness of the error here is not in dispute, its substantiality is.  *See People v. Glover*, 2015

20

COA 16, ¶ 48 (An error is substantial if it is "seriously prejudicial." (quoting *People v. Ujaama,* 2012 COA 36, ¶ 43)).

¶ 47    An error is substantial and requires reversal "only if [it] 'so undermined the fundamental fairness of the trial itself so as to cast serious doubt on the reliability of the judgment of conviction.'" *Hagos,* ¶ 14 (quoting *People v. Miller,* 113 P.3d 743, 750 (Colo. 2005)); *see also People v. Maloy,* 2020 COA 71, ¶ 11; *Glover,* ¶ 48; *Ujaama,* ¶ 43.

¶ 48    At the HDVO trial, the prosecution presented only the certified documents from Ryan's four prior convictions.  The trial court reviewed the documents with the prosecutor and located the prior courts' domestic violence findings in each case.  At the conclusion of that review, and without seeking input from Ryan, the court found that "the People ha[d] tendered certified copies showing beyond a reasonable doubt that [Ryan] ha[d] been convicted of at least four prior convictions pursuant to guilty pleas in cases that included [a] domestic violence factual basis."

¶ 49    We acknowledge that a prior court's finding that a previous conviction included an act of domestic violence constitutes prima facie evidence that the crime involved domestic violence.  *See* § 18-

21

6-801(7)(d)(III)(A). However, the record shows that Ryan was never afforded the opportunity to rebut this prima facie evidence. *See* Black's Law Dictionary 701 (11th ed. 2019) (Prima facie evidence is "[e]vidence that will establish a fact or sustain a judgment unless contradictory evidence is produced."); *see also Williams v. People*, 2019 CO 101, ¶¶ 42-43; *People in Interest of Z.T.T.*, 2017 CO 48, ¶ 11; *People v. Porterfield*, 772 P.2d 638, 639 (Colo. App. 1988).

¶ 50    For that reason, we conclude that the trial court's erroneous resolution of the domestic violence question so undermined the fundamental fairness of the proceeding as to cast serious doubt on the reliability of the HDVO adjudication.

¶ 51    Accordingly, we reverse Ryan's HDVO adjudication and the resulting felony convictions. However, contrary to Ryan's contention, we conclude that the case should be remanded for the prosecution to decide whether it wishes to accept misdemeanor convictions on the jury's findings of guilt on the charged offenses or retry Ryan on the HDVO counts. *See People v. Porter*, 2015 CO 34, ¶¶ 26-30; *Kadell*, ¶ 31; *cf. People v. Viburg*, 2021 CO 81M, ¶ 17 (A conviction reversed for legal error "signals that the defendant was convicted through a defective judicial process," and, "[a]s such, the

22

'accused has a strong interest in obtaining a fair readjudication of [their] guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished'"; "[t]hus, where a legal error occurs in the trial court, double jeopardy typically does not bar retrial." (quoting *Burks v. United States*, 437 U.S. 1, 15 (1978))).

## IV.   Restitution

¶ 52    Ryan last contends, the People concede, and we agree that the trial court erred by failing to hold a hearing on Ryan's objection to the prosecution's restitution request and that the case should be remanded for such a hearing. *See People v. Martinez-Chavez*, 2020 COA 39, ¶¶ 15-31. Thus, we need not address Ryan's alternative argument that the court erred by imposing restitution in the absence of sufficient evidence proving the amount of restitution owed and proximate causation.

¶ 53    For the first time in his reply brief, though, Ryan challenges the trial court's restitution order on timeliness grounds, in light of the recently announced opinion in *Weeks*. *See Weeks*, ¶ 5.

¶ 54    We decline to address this timeliness challenge because Ryan did not raise it in either the proceedings below or in his opening brief. *See People v. Salazar*, 964 P.2d 502, 507 (Colo. 1998); *see*

23

*also People v. Grant,* 174 P.3d 798, 803 (Colo. App. 2007). Although *Weeks* was announced after Ryan filed his opening brief, defendants in other cases published before *Weeks* raised the same timeliness challenge addressed in *Weeks* in numerous opinions from this court. *See Weeks,* ¶ 47 n.16. On remand, however, the trial court may consider its authority to impose restitution in light of *Weeks.*

## V.    Conclusion

¶ 55    The judgment of conviction is reversed, and the case is remanded for the entry of misdemeanor convictions on the jury's verdicts or for the prosecution to retry Ryan on the HDVO counts in accordance with section 18-6-801(7). The restitution order is also reversed, and the case is remanded for the trial court to determine restitution in accordance with section 18-1.3-603, C.R.S. 2022, and *Weeks.*

JUDGE LIPINSKY and JUDGE CASEBOLT concur.